# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CDX LIQUIDATING TRUST by the )
CDX LIQUIDATING TRUSTEE, )
                           )
        **Plaintiff,**      )     **Case No. 04 C 7236**
                           )
        **v.**             )     **Magistrate Judge Morton Denlow**
                           )
VENROCK ASSOCIATES, )
VENROCK ASSOCIATES II, L.P., )
HAMBRECHT & QUIST )
CALIFORNIA, H&Q EMPLOYEE )
VENTURE FUND 2000, L.P., )
ACCESS TECHNOLOGY )
PARTNERS BROKERS FUND, L.P., )
H&Q CADANT INVESTORS, L.P., )
CHASE EQUITY ASSOCIATES, )
L.L.C., J.P. MORGAN PARTNERS )
(BHCA), L.P., ERIC COPELAND, )
C.H. RANDOLPH LYON, )
STEPHAN OPPENHEIMER, and )
CHARLES WALKER, )
                           )
        **Defendants.**    )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on an emergency motion by the CDX Liquidating

Trustee ("Plaintiff") to set a discovery cut-off for damage discovery and to consolidate

liability and damage issues for trial. Institutional Defendants (Venrock Associates, Venrock

Associates II, L.P., Hambrecht & Quist California, H&Q Employee Venture Fund 2000, L.P.,

Access Technology Partners Brokers Fund, L.P., H&Q Cadant Investors, L.P., Chase Equity

Associates, L.L.C., and J.P. Morgan Partners (BHCA) L.P.) and Individual Defendants[1] (Eric Copeland, C.H. Randolph Lyon, Stephan Oppenheimer, and Charles Walker) oppose the motion. For the reasons stated in open court on May 7, 2008, and as discussed below, Plaintiff's motion is denied and the parties are directed to submit their final pretrial order on August 25, 2008 on the issues of liability.

## I. PROCEDURAL HISTORY

### A.    PROCEEDINGS BEFORE JUDGE WEDOFF THROUGH MAY 2005

This matter was originally filed by Plaintiff as an adversary proceeding on June 16, 2004 in the U.S. Bankruptcy Court for the Northern District of Illinois. Dock. No. 1, Nov. 9, 2004. Plaintiff is the Liquidating Trustee for CDX Corporation ("CDX"), formerly known as Cadant, Inc. ("Cadant"), which was in the business of providing cable modem systems for home computer high-speed internet access. Opinion and Order, Dock. No. 45, June 4, 2007, at 1-2. Plaintiff alleges in its complaint that "from January 2000 until May 2001, all or most of the Defendants spurned legitimate third-party financing in order to engage in self-dealing bridge loans on terms highly unfavorable to Cadant." *Id.* at 2. Plaintiff alleges that the rejection of these offers was predicated on continued assurances from certain Defendants that they would support the company with fair and equitable financing, and that subsequent to gaining control of Cadant through bridge loans, Defendants sold Cadant in a conflicted transaction to Arris Group, Inc. ("Arris") at a fire sale price. *Id.* The shareholders allegedly

---

[1] The Institutional Defendants and the Individual Defendants are hereinafter collectively referred to as "Defendants."

received nothing from this sale, but the Defendant bridge lenders recovered funds. *Id.*

Following the sale, CDX filed a petition under Chapter 11 of the Federal Bankruptcy Code in June 2002. *Id.* Judge Eugene R. Wedoff, presiding in the United States Bankruptcy Court for the Northern District of Illinois, approved a reorganization plan in November 2002. *Id.* On November 1, 2004, Judge Wedoff closed all bankruptcy proceedings related to CDX, and thus all that remains of the case is this adversary proceeding. *Id.*

On January 6, 2005, Judge Wedoff granted in part Defendants' motion to dismiss. Inst. Def. Resp., Ex. J. Plaintiff's remaining claims include the Trustee's claims for breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, civil conspiracy to breach fiduciary duties, and equitable subordination. *Id.*

At the time of filing in July 2004, Plaintiff included a jury demand in its adversary complaint. Motion To Withdraw, Ex. A, at 64, Dock. No. 19, Oct. 19, 2006. On November 5, 2004, Defendants filed a Motion to Withdraw Reference to the Bankruptcy Court. Dock. No. 1, Nov. 5, 2004. In its motion, Defendants argued that because not all parties consented to a jury trial before the Bankruptcy Court, the jury trial should be held before the District Court. *Id.*

Meanwhile, in March of 2005, Judge Wedoff suggested bifurcating the case for separate trials on issues of liability first and then, if necessary, damages. Inst. Def. Resp., Ex. C. Judge Wedoff stated that bifurcation may limit the time required for discovery, the expenses incurred by both parties, and the amount of time required of the court to try the matter. *Id.* In his discussion, however, Judge Wedoff appeared to contemplate this idea in

the context of conducting a bench trial, rather than a jury trial.[2] *Id.* On May 10, 2005, Judge

Wedoff entered an agreed "Order For Bifurcated Trial," ("Bifurcation Order") requiring all

fact and expert discovery be conducted on liability issues first. Inst. Def. Resp., Ex. B.

## B.        PROCEEDINGS BEFORE JUDGE GUZMAN THROUGH AUGUST 2005

On August 10, 2005, District Court Judge Ronald A. Guzman denied Defendants'

Motion to Withdraw Reference to the Bankruptcy Court. Dock. No. 17, August 10, 2005.

Judge Guzman determined that the Trustee's claims were appropriate for a jury trial in the

District Court, but that the withdrawal of reference was not appropriate at that time. *Id.* Judge

Guzman further ordered that the Bankruptcy Court should preside over all pre-trial matters

through the close of discovery. *Id.* Based on the May 2005 Bifurcation Order, all fact and

expert discovery over the past 2 ½ years has been limited to liability issues.

## C.        PROCEEDINGS BEFORE JUDGE WEDOFF THROUGH OCTOBER 2006

In March 2006, Judge Wedoff discussed with the parties how to proceed with

discovery in light of the ruling that the case should be tried by a jury. Inst. Def. Resp., Ex.

A. During this discussion, Plaintiff brought to the attention of Judge Wedoff its concern over

whether "the remaining discovery [would] continue as to liability in accordance with the

Court's earlier ruling on the bifurcation." Inst. Def. Motion, Ex. A at 8. Judge Wedoff

---

[2] During the March 24, 2005 Court hearing, Judge Wedoff refers to factual findings that
he, rather than a jury might make at trial. Inst. Def. Resp., Ex. C. For example, after initially
stating that bifurcation may be a good idea, Judge Wedoff stated "If expert testimony is only
relevant to the question of damages, if I find breaches of fiduciary duty, then it might be that
expert testimony would be relevant to a defense on the question of damages . . ." *Id.*

indicated that although he did not think his Bifurcation Order would be binding on the District Court, he did think the District Court would agree with him that "it does[ not] make a great deal of sense to have the discovery on damages proceed before there's a determination of liability." *Id.* Plaintiff expressed its desire to have the same jury decide liability and damages, at which time Judge Wedoff told Plaintiff it needed to bring that issue before the District Court Judge in its motion for withdrawal of reference. *Id.* at 9.

In October 2006, Plaintiff filed a Motion to Withdraw Reference to the Bankruptcy Court. Dock. No. 19, Oct. 19, 2006. In its motion, Plaintiff discussed the jury demand in the case, but did not mention the Bifurcation Order or its desire to have that order reversed. *Id.* While the motion was being assigned to the appropriate district court judge, Defendants filed a motion in the Bankruptcy Court to strike Plaintiff's jury demand, along with a motion to withdraw their own jury demand. Opinion and Order, at 3, Dock. No. 45, June 4, 2007. Judge Wedoff granted Defendants' motion to withdraw their jury demand, but denied the motion to strike Plaintiff's jury demand. *Id.* Subsequently, Individual Defendant C.H. Randolph Lyon filed a motion for summary judgment, which Judge Wedoff denied. *Id.* at 3-4.

## D.    PROCEEDINGS BEFORE JUDGE NORGLE THROUGH NOVEMBER 2007

On June 4, 2007, District Judge Charles R. Norgle granted Plaintiff's Motion to Withdraw Reference, and ordered a jury trial to take place in the District Court. *Id.* at 6. Judge Norgle reiterated Judge Guzman's determination that the Trustee's claims established a right to a trial by jury, and acknowledged that fact discovery was nearly complete, and thus

the case was ready for trial. *Id.*

On September 10, 2007, the parties submitted a Joint Status Report to Judge Norgle, reiterating that the case has been bifurcated into separate liability and damages phases. Ind. Def. Resp., Ex. E. The Report indicated that fact discovery concerning the liability phase is complete, that expert discovery is nearly complete, and that discovery has not addressed damages. *Id.* Over 245,000 pages of documents were produced, 37 fact depositions were taken, and expert discovery would be completed by November 5, 2007. *Id.* The Report does not mention the jury demand or Plaintiff's desire to have the Court reverse the Bifurcation Order. *Id.* The parties anticipate the trial for the liability phase will take approximately six weeks.

On November 26, 2007, Plaintiff filed an emergency motion[3] to consolidate liability and damage issues for trial. This motion is currently before the Court by means of a referral from Judge Norgle. Dock. No. 60, July 17, 2007 (referring matter to assigned Magistrate Judge for all discovery and other pretrial matters); Dock. No. 73, Sept. 17, 2007 (referring matter to Magistrate Judge Denlow). Oral argument was held on May 7, 2008. During oral argument the parties confirmed that discovery on the issue of liability is now complete.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 42(b) authorizes district courts to order separate trials of claims or issues "in furtherance of convenience or to avoid prejudice, or when separate

---

[3] The Court remains unclear as to why this motion was filed as an "emergency," as Plaintiff has indicated no exigent circumstances that caused it to file this motion as such.

trials will be conducive to expedition and economy" while "always preserving inviolate the right of trial by jury." Fed. R. Civ. P. 42(b). A court has considerable discretion when deciding whether to bifurcate a trial, and must make this decision on a case by case basis. *Krocka v. City of Chicago,* 203 F.3d 507, 516 (7th Cir. 2000); *Real v. Bunn-O-Matic Corp.,* 195 F.R.D. 618, 620 (N.D. Ill. 2000). A court may bifurcate a trial provided that the ruling "1) serves the interests of judicial economy or is done to prevent prejudice to a party; 2) does not unfairly prejudice the non-moving party; and 3) does not violate the Seventh Amendment." *Krocka,* 203 F.3d at 516. Courts must balance the equities when ruling on a motion to bifurcate, and "should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice." *Real,* 195 F.R.D. at 620 (N.D. Ill. 2000). Because bifurcation risks additional delay, it has remained the exception rather than the rule. *Pfizer, Inc. v. Novopharm, Ltd.,* 57 U.S.P.Q. 2d 1442, 1443 (N.D. Ill. 2000). In order for a court to grant bifurcation, the party seeking bifurcation bears "the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials, based on the circumstances of the individual case." *Real,* 195 F.R.D. at 620. When determining whether to bifurcate a trial, courts have considered various factors such as "judicial efficiency, possibility of needless delay, potential juror confusion, the timing of the request for bifurcation, whether any filing delay was tactical, the overlap of evidence and witnesses between the two trials, and prejudice to each party." *Trading Technologies Int'l v. eSpeed, Inc.,* 431 F. Supp. 2d 834, 838 (N.D. Ill. 2006).

## III. DISCUSSION

This motion presents a unique situation, as the Court is not asked to rule on a motion to bifurcate, but rather the Court must decide whether to reverse the Bifurcation Order and consolidate the issues for trial.[4]  Although both parties originally agreed to bifurcate this case, Plaintiff now moves the Court to undo Judge Wedoff's May 10, 2005 agreed order for bifurcated discovery and trial.  Plaintiff admits that bifurcation initially made sense when the case was going to be decided by the judge, because the parties would avoid having to re-introduce portions of evidence and re-educate the judge during the damages phase of trial. Because the case is now going to be decided by a jury, Plaintiff asserts that consolidating the issues into one trial will promote judicial economy and avoid undue prejudice.  Defendants oppose this motion for the same reasons, arguing the Bifurcation Order should remain in effect in order to promote judicial economy and avoid unfair prejudice.  Although this matter is not a traditional motion to bifurcate, the Court still finds the above three-part test governs the determination of whether bifurcation is appropriate.

Under the Seventh Circuit's three-part test, if the Court finds that bifurcation will promote judicial economy or assist in avoiding prejudice to a party, the Court must then

---

[4]The parties dispute whether the Court should apply a de novo standard of review or an abuse of discretion standard. If one of the parties had appealed the decision to bifurcate after a final judgment was entered, the Seventh Circuit would review the case on an abuse of discretion standard. Here, the Court must simply determine whether to reverse a bankruptcy judge's ruling before trial begins. Interlocutory orders, which have not been taken to judgment or determined on appeal, may be reconsidered at any time by the trial court, and the trial court has discretion to make a different determination on any such matters. *Cameo Convalescent Center Inc. v. Percy,* 800 F.2d 108, 110 (7th Cir. 1986). Judge Wedoff's agreed Bifurcation Order was a pre-judgment order, and thus is interlocutory and may be reconsidered at any time. *See All EMS, Inc. v. 7-Eleven Inc.,* 181 Fed. Appx. 551, 559 (7th Cir. 2006) (nonprecedential disposition).

determine whether bifurcation will unfairly prejudice the non-moving party. *Krocka,* 203 F.3d at 516. In this case, because Defendants have relied on the original Bifurcation Order for the past 2 ½ years, the Court finds it important to consider the potential prejudice to both parties when deciding whether to reverse the Bifurcation Order.

## A. JUDICIAL ECONOMY AND PREJUDICE TO THE PARTIES

To determine whether bifurcation in this case is warranted, the Court must first determine whether separate trials would either promote judicial economy or avoid prejudice to the parties. *Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117, 1121 (7th Cir. 1999). The Court needs only to find one of these criteria before ordering separation. *eSpeed, Inc.,* 431 F. Supp. 2d at 836-37. The Court finds that bifurcation in this case serves both to promote judicial economy and to prevent prejudice to the parties.

### 1. Bifurcation promotes judicial economy.

Defendants argue that consolidating the cases would cause possible juror confusion, and added delay and expenses. Because Defendants believe they have a strong likelihood of success in defeating Plaintiff's claims during the liability phase, they argue that keeping the case bifurcated will result in a more efficient use of the Court's time, as well as the parties' time. While the Court makes no finding as to the merits of the case, the Court agrees that keeping discovery and trial bifurcated between liability and damages is the most efficient way to resolve these claims at this time because liability discovery is complete and damages discovery has not begun.

#### a. Risk of Juror Confusion

Defendants argue that consolidating the issues of liability and damages will create a risk of juror confusion. This case involves many different parties, both individuals and institutions. Key evidence, in the form of both written documentation and deposition testimony, comes from dozens of sources, and covers a time period of approximately three years. The legal issues to which the parties will apply that evidence are discrete and myriad, deriving from statutory and common law from multiple jurisdictions, and both parties plan to present testimony from multiple experts on issues that are highly technical. At the conclusion of the liability trial alone, according to Defendants, the jury will need to sort through the facts to determine 1) which, if any, of the Individual Defendants might be liable for breaching a fiduciary duty, 2) to which Board decisions those liability determinations attach; 3) whether any of the Individual Defendants found liable conspired with another to breach the fiduciary duty, and 4) with whom the Individual director conspired. The jury must also sort through the conduct of the Institutional Defendants. Because of the complicated facts and evidence involved in this case, Defendants assert that bifurcation is necessary to maintain clarity of the issues for the jury.

Plaintiff argues that any concern about jury confusion can be remedied by "good lawyering, cautionary warnings, limiting instruction, or special verdict forms." Pl. Reply at 7 (citing *Real,* 195 F.R.D. at 621). Although such remedies do exist, given the complexity of both liability and damages issues in this case, the large number of institutional and individual defendants, and the unique jurisdictional issues, the Court agrees that keeping the Bifurcation Order in place will lower the risk of juror confusion in an already complex case.

b.    **Additional Delay and Expenses**

Defendants also urge the Court to consider the additional delay and expenses that would result if discovery and the trial were no longer bifurcated. The entire course of discovery in this case has contemplated bifurcation of damages from liability. The parties have spent over two years conducting discovery only on liability issues. According to Defendants, to consolidate the issues now, when discovery on the liability phase is complete, would be "overwhelming," and would "delay trial indefinitely and undo the fruits of two and a half years' worth of exhausting pretrial preparation." Inst. Def. Resp. at 7. The liability and damages issues in this case are each complex and fact intensive. If the Bifurcation Order is reversed, the parties would be required to undergo new written discovery, extensive third-party document requests, and re-schedule and re-open many depositions. Defendants also asserts that a new round of expert discovery will be necessary once Plaintiff articulates its damages theory.

Plaintiff, however, argues that consolidating the cases for trial is in the interests of judicial economy because the issues involved in the liability and damages phases overlap. Plaintiff asserts that much of the discovery on liability involved damages issues, and thus additional discovery on damages would not be extensive. Plaintiff also argues it would be a waste of the Court's time and resources to have two juries hear the issues separately, because the parties would have to address many of the issues regarding liability in order for the second jury to properly understand the damages issues. Plaintiff also asserts that in a bifurcated trial, close questions regarding whether certain evidence sought to be introduced by a party constitutes liability or damages evidence will be raised and debated, further prolonging and complicating an already lengthy process. In addition, Plaintiff contends that not every fact witness would have to be re-deposed, as they do not all have testimony relevant to the issue of damages. And according to Plaintiff, the most important witness, Arris, has already been deposed on the issues of both liability and damages.

Consolidating liability and damages for trial would likely delay the trial significantly, not only to allow the parties time to pursue discovery, but to allow the parties time to modify their trial strategies. Because no issues of liability would be resolved, the parties would have to undergo damages discovery for all defendants on all claims, extending discovery further than if some of those defendants or claims were first resolved in a separate trial. Moreover, at trial, the parties would have to present damages evidence for all defendants on all claims, making the trial longer than it might otherwise be if separate trials were conducted. If the Bifurcation Order remains, and not all Defendants are found fully liable, the time spent both

conducting discovery and at trial would decrease, and the risk of juror confusion would lessen.  *See eSpeed,* 431 F. Supp. 2d at 839-40 (stating that a consideration for determining whether bifurcation promotes judicial economy is the probability that a defendant will prevail on an infringement issue (in a patent case) and thus eliminate the need to address the damages issue).

### c.    Probability of Success on Merits

Trial of separate issues is appropriate where determination of one issue may dispose of the necessity to engage in extensive, expensive discovery on that issue.  *See Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,* 2004 WL 609326 (N.D. Ill. 2004). Defendants argue there is a strong probability that it will be unnecessary for a jury to consider damages evidence in this case for all of the Defendants, and thus it will be a waste of judicial resources to try the damages issues with the liability issues.  Defendants assert that any judgment against any particular director will stem, at most, from just one or two factual events, and thus only certain Defendants, and certain events, ultimately will be relevant for damages purposes.

Defendants assert that because of the predecessor case, *Kennedy v. Venrock Assoc.,* 348 F.3d 584 (7th Cir. 2003), and the various claims that were already dismissed in this case, that there is a strong likelihood that Plaintiff will not succeed on the merits, at least not as to all Defendants.  Defendants also contend that not all Individual Defendants were members of the Board when the events that are the core of the Trustee's case occurred.

According to Defendants, in the *Kennedy* case, a group of Cadant common

shareholders, represented by Plaintiff's counsel, brought direct claims against these same Defendants that were nearly identical to the claims in the current action, including claims that Cadant's Board "fraudulently" decided to reincorporate in Maryland and failed to include biographical information in its proxy statement. This Court dismissed the *Kennedy* complaint because its claims belonged to Cadant, not the individual shareholders. The Seventh Circuit affirmed on that basis, but in addition, rejected a number of Plaintiff's substantive theories, including the theory that JP Morgan and Venrock had an agreement or conspiracy "to control Cadant." *Kennedy,* 438 F.3d at 591-92 (stating that Defendants made no agreement or conspiracy to control Cadant). Defendants state that in *Kennedy,* the Seventh Circuit criticized a prior version of the plaintiff's breach of fiduciary duty claims, specifically rejecting the allegation that, for example, Cadant's directors engaged in actionable fraud by reincorporating Cadant in Delaware. *Kennedy,* 438 F.3d at 591.

In addition, on January 6, 2004, Judge Wedoff dismissed nine of the seventeen counts of Plaintiff's Adversary Complaint. Some of these claims were dismissed solely on his finding that such claims were to be resolved in arbitration. However, Judge Wedoff also dismissed several of Plaintiff's claims on the merits, including Plaintiff's fraud claims, finding Defendants had no duty to disclose their intentions to Cadant, and Plaintiff's claim for negligence due to its failure to allege any facts of negligence. Plaintiff's claim for negligence against the Individual directors was also dismissed based on it being duplicative to Plaintiff's breach of fiduciary duty claim. However, Judge Wedoff maintained eight of Plaintiff's claims, finding that they did state a "plausible claim for relief." In his ruling, however, he did

note that several of these claims were not plead artfully, and also expressly stated that his ruling on Plaintiff's claims for breach of fiduciary duty did "not mean that each allegation . . . is relevant or that any individual allegation would give rise to a breach of fiduciary duty." Ind. Def. Resp., Ex. J.

Plaintiff argues that *Kennedy* is irrelevant to this case, as it involved a different plaintiff, was dismissed for lack of standing, and predated all of the extensive discovery that has occurred to date. Plaintiff further states that the Court's denial of a motion for summary judgment against one of the Individual Defendants supports Plaintiff's chances for success on the merits.

Although Plaintiff's fraud claims are no longer in the case, its conspiracy claims against all Defendants as well as its aiding and abetting claims still remain. Although distinct from one another, Plaintiff bases these claims on the same allegations. The Court in *Kennedy* specifically addressed the weaknesses in Plaintiff's allegations that Defendants conspired or were in agreement with one another to control Cadant. The Court's opinion in *Kennedy,* along with Judge Wedoff's concerns regarding how the conspiracy claim was plead, demonstrate a reasonable likelihood that Plaintiff may not succeed in proving liability for all claims against all Defendants. Given this likelihood, it is in the interests of judicial economy to keep the case bifurcated.

### 2. Bifurcation Prevents Prejudice to the Parties.

In this case, maintaining the Bifurcation Order will also prevent prejudice to the parties. Defendants assert that many of the Defendants have nothing to do with some of the

damages issues, but consolidating the trial would cause all Defendants to endure added expenses and delays. This case involves multiple Defendants, including four separate individuals. Defendants assert that, until Plaintiff can ascribe to each particular Defendant the specific act(s) that constitute the alleged breaches of fiduciary duty, requiring all Defendants to defend against all damage claims is highly prejudicial. Defendants argue they are entitled to know which if any of Plaintiff's theories of liability a jury finds credible before undergoing damages discovery for each Defendant. Otherwise, all Defendants will be saddled with the burden of subsidizing discovery that has nothing to do with them.

Plaintiff has not yet articulated a damages theory in the case, but Defendants assume that it will require a comparison to similarly situated companies and/or competitors to ascertain Cadant's value at any particular moment. Defendants assert that such a comparison will be an exceedingly complex task, and that any damages that Trustee asserts relating to Cadant's value requires a damages analysis considering the progress and valuation of internet infrastructure companies comparable to Cadant at the time of the relevant Board decision. Not only will sorting through evidence on different damages theories be complicated for the jury, but obtaining discovery on those issues will be expensive, extensive, and time consuming. Although Plaintiff may submit that damages discovery may be as simple as asking for an expert opinion, Defendants argue that defending the Individual Defendants on damages issues will be far more complicated and require much greater time, effort, and expense. At oral argument, it was estimated that damages discovery would take a minimum of six to nine months, with over 20 depositions, and several new experts. Given the

complexity of the damages discovery and the likelihood that not all Defendants will be found liable for all claims, keeping the Bifurcation Order in place will avoid prejudice to Defendants.

Moreover, all parties have based their pre-trial discovery and otherwise relied on Judge Wedoff's May 10, 2005 Bifurcation Order when preparing this case for trial. All parties have prepared for the liability trial based on this premise. It is unfair to Defendants to now grant Plaintiff's motion, at this late date, and change the entire course of action upon which this case has been based. *See eSpeed, Inc.,* 431 F. Supp. 2d at 837 (including the timing of the request for bifurcation as a factor that courts consider when deciding a motion to bifurcate).

## B.    PREJUDICE TO PLAINTIFF

Plaintiff argues that if the Bifurcation Order remains, it would be required to fully educate a second jury on "a host of matters" previously presented to the first jury. If this is the case, although this may extend the length of trial, the Court does not find that discussing this evidence again will unfairly prejudice Plaintiff. According to Defendants, the liability and damages issues here are entirely distinct, and thus any risk of inconsistent or overlapping verdicts is not present. Plaintiff also asserts that the Trustee will be less able to afford the cost of two trials compared to Defendants. Any cost associated with having to re-introduce pertinent evidence from the first trial, however, should be minimal, as Plaintiff would conceivably already have that prepared from the first trial. Moreover, Plaintiff will likely not incur significant additional costs by keeping the Bifurcation Order in tact. If anything, Plaintiff's costs might decrease, given that once liability is resolved, meaningful settlement

17

talks are more likely to take place.

Moreover, Plaintiff has operated under the Bifurcation Order for over two years, and has even used the Order many times as a shield to avoid discovery obligations of its own. It has thus certainly anticipated the costs of two trials, and has never before argued that such costs would be prejudicial. Plaintiff argues it is raising this issue at such a late stage because there has been a change in circumstances of the case, and that before, "the only option was a bench trial." However, Plaintiff made its jury demand when it filed its complaint, and thus anticipated the case being tried before a jury from the very start of this case. Moreover, the parties had notice that the case would likely be tried before a jury as early as August 10, 2005, only three months after the agreed Bifurcation Order was entered. Plaintiff did raise its concern over the Bifurcation Order with Judge Wedoff seven months later, and was advised to raise this issue with his motion to withdraw reference. Instead of doing so, however, it waited until over a year after filing its motion to withdraw reference to file this so-called "emergency motion," and over five months after Judge Norgle granted the motion to withdraw. It is difficult to find Plaintiff is truly prejudiced by the Bifurcation Order when it has waited so long to bring this motion after having notice of this "change in circumstance." *See eSpeed, Inc.* 431 F. Supp. 2d at 837 (listing the timing of the bifurcation request as an important consideration).

Finally, Plaintiff, relying on *Real,* argues that Defendants have the burden to prove that Plaintiff would not be unfairly prejudiced if bifurcation takes place. *See Real,* 195 F.R.D. at 620. However, the Court is not certain this burden is correctly placed on Defendants. The

burden is placed on the party seeking bifurcation when a court is faced with the decision to bifurcate. *Id.* In this case, the decision to bifurcate has already been made by both parties, and it is Plaintiff who seeks now to undue that Bifurcation Order. Although Defendants do seek to have the Bifurcation Order remain, they are not the moving party in this instance. Thus, the Court does not find it appropriate to place this burden on the Defendant "based on the circumstances of th[is] individual case." *Id.* Based on the information submitted by both parties, the Court does not find that Plaintiff will be unfairly prejudiced if the trials remain bifurcated.

## C. SEVENTH AMENDMENT

Finally, before authorizing bifurcation, the Court must determine that separate trials would not violate the Seventh Amendment. *Houseman,* 171 F.3d at 1117. The Seventh Amendment does not prohibit having two juries review overlapping evidence. *See Houseman,* 171 F.3d at 1128 (explaining that the Seventh Amendment does not prohibit two juries from reviewing the same evidence, but rather prohibits having two juries decide the same essential issues). The issues of liability and damages do not require the juries to decide the same essential issues. In addition, Plaintiff does not argue that bifurcation would violate its Seventh Amendment rights. Accordingly, the Court finds that the case can be bifurcated without violating the Seventh Amendment.

## IV. CONCLUSION

For over 2 ½ years, the parties have proceeded to prepare this case for trial on the basis that the issues of liability and damages would be bifurcated. Discovery on the issue of liabiity

19

is now complete. All that remains is the filing of a final pretrial order and setting a trial date. To reopen discovery on the issue of damages would result in a further delay of approximately one year as the parties incur substantial expense in taking fact and expert discovery. After balancing the equities, the Court finds that at this late stage of the case, keeping this case bifurcated is appropriate to ensure judicial efficiency and to avoid unfair prejudice. Thus, for the reasons set forth in open court on May 7, 2008, and in this opinion, **Plaintiff's emergency motion to set a discovery cut-off for damage discovery and to consolidate liability and damages issues for trial is denied.**

**SO ORDERED THIS 12th DAY OF MAY, 2008.**

_Morton Denlow_
_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Hugh Gerard McBreen
McBreen and Kopko
20 North Wacker Drive, Suite 2520
Chicago, IL 60606

Counsel for Plaintiff

James Arthur McGurk
Law Offices of James A. McGurk, P.C.
140 South Dearborn Street, Suite 404

Chicago, IL 60603

Counsel for Plaintiff

Richard Carl Leng
Law Offices of Richard C. Leng
330 West Main Street
Barrington, IL 60010

Counsel for Plaintiff

United States Trustee
227 West Monroe Street, Suite 3350
Chicago, IL 60606

Eugene Robert Wedoff
United States Bankruptcy Court
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

Kenneth S. Gardner
United States Bankruptcy Court
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

David A. Rammelt
Dawn Michele Beery
James M. Reiland
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

Counsel for Institutional Defendants

Thomas Otman Kuhns
Melissa Kaye Grouzard
Thomas A. Tozer
Gabor Balassa
Matthew Thomas Regan
Kirkland & Ellis LLP
200 East Randolph Drive, Suite 6100
Chicago, IL 60601

Counsel for Individual Defendants

Richard Scott Alsterda
Alex Pirogovsky
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602

Counsel for Defendant Heller Ehrman
White & McAuliffe LLP

J Daniel Sharp
Folger Levin & Kahn LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111

Counsel for Defendant Venture Law Group