# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CDX LIQUIDATING TRUST by the | ) | |
| CDX LIQUIDATING TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 7236 |
| | ) | |
| VENROCK ASSOCIATES, | ) | |
| VENROCK ASSOCIATES II, L.P., | ) | |
| VENROCK ENTREPRENEURS FUND L.P. | ) | Magistrate Judge Morton Denlow |
| HAMBRECHT & QUIST | ) | |
| CALIFORNIA, H&Q EMPLOYEE | ) | |
| VENTURE FUND 2000, L.P, ACCESS | ) | |
| TECHNOLOGY PARTNERS, L.P., ACCESS | ) | |
| TECHNOLOGY PARTNERS BROKERS | ) | |
| FUND, L.P., H&Q CADANT INVESTORS, | ) | |
| L.P.,  CHASE EQUITY ASSOCIATES, | ) | |
| L.L.C., J.P. MORGAN PARTNERS (BHCA,) | ) | |
| L.L.C., ERIC COPELAND, C.H. | ) | |
| RANDOLPH  LYON, STEPHAN | ) | |
| OPPENHEIMER, and | ) | |
| CHARLES WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on six motions *in limine* filed by Plaintiff CDX

Liquidating Trust by the CDX Liquidating Trustee ("Plaintiff" or "CDX" or "Trustee")

and on eleven motions *in limine* filed by Venrock Associates ("Defendants" or "Venrock,

et al.").  CDX's first five motions *in limine* and Defendant's first ten motions *in limine* are

the subject of this memorandum opinion and order.

These motions were referred by District Court Judge Charles R. Norgle, Sr. for resolution pursuant to 28 U.S.C. § 636(b)(1). This Court held oral argument on June 24 and 29, 2009, at which time the Court made oral rulings. This opinion provides a more complete explanation for those rulings.

## I. BACKGROUND FACTS

The factual and procedural history of this case is complex. Therefore, for purposes of this opinion, this Court sets forth only those details necessary to decide the motions presently pending before the Court.

CDX, formerly known as Cadant, filed this lawsuit on June 16, 2004.[1] This case originated in bankruptcy court. Cadant filed for bankruptcy in the U.S. Bankruptcy Court for the Northern District of Illinois on June 17, 2002. Upon filing of the bankruptcy petition, all of Cadant's alleged derivative claims became part of the estate. In this lawsuit, CDX alleges: (1) from January 2000 through May 2001, all or most of the Defendants spurned legitimate third-party financing in order to engage in self-dealing bridge loans on terms highly unfavorable to Plaintiff; (2) the rejection of the third-party financing offers was predicated on continued assurances from certain Defendants they would support the company with fair and equitable financing; and (3) subsequent to gaining control through bridge loans, Defendants sold the company to Arris Group, Inc.

---

[1] 2 For purposes of this motion, this Court relies upon the facts as set forth in Judge Guzman's Aug. 8, 2005 Memorandum and Order, as well as parties' briefs. Judge Guzman's Aug. 8, 2005, Memorandum and Order is Dkt. 17. Plaintiff's memorandum in support of its motion *in limine* is Dkt. 122-123. Defendants' motion *in limine* is Dkt. 125-126.

("Arris"), with Defendants—not shareholders—recovering funds through the sale.[2]  Dkt. 17.

Former Defendant Venture Law Group was the debtor's general counsel.  The remaining individual Defendants provided financing to the debtor.  The Trustee alleges Defendants schemed to enrich themselves at the expense of the debtor and that Defendants' actions caused the debtor to take several short-term loans on terms ensuring it would default.  From this default, the lender and board member Defendants would obtain the debtor's assets.  Based on those allegations, the Trustee asserts claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duties, negligence, fraud, conspiracy, and equitable subordination.

In June 2002, following the company's sale to Arris, CDX filed a petition under Chapter 11 of the Federal Bankruptcy Code.  In the United States Bankruptcy Court for the Northern District of Illinois, Bankruptcy Judge Eugene R. Wedoff approved a reorganization plan and closed all bankruptcy proceedings related to CDX on November 1, 2004.  The plan included provisions for the commencement of this action.

The complaint initially listed sixteen causes of action.  Defendants moved to strike the entire complaint pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(6).  The motion was granted in part, but denied with respect to Plaintiff's claims for breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, civil conspiracy to breach fiduciary duties, and equitable subordination.  Defendants filed a motion to withdraw the

---

[2] Dkt. _____ refers to docket entries in this case.

reference to the bankruptcy court before District Judge Ronald A. Guzman. On August 10, 2005, Judge Guzman issued a memorandum opinion and order denying Defendants' motion. Judge Guzman found, *inter alia*, that (1) although certain Defendants had waived their right to a jury trial by filing proofs of claim, they were entitled to rely on the Trustee's jury demand; (2) given Defendants' repeated refusal to consent to a jury trial in the bankruptcy court, any trial in this case must take place in the district court; (3) although a withdrawal of reference was not appropriate at that time, the court would reconsider the matter when the case was ready for trial; and (4) the bankruptcy judge should preside over all pre-trial matters through the close of discovery.

In October 2006, Plaintiff filed a motion to withdraw reference. On February 12, 2007, Judge Guzman recused himself. The case was reassigned to Judge Mark Filip, who struck the Plaintiff's motion without prejudice. Dkts. 33-34. On March 9, 2007, Judge Filip reinstated the case, deemed the Plaintiff's motion filed instanter, and ordered the parties stand on previously filed briefs. Dkt. 38. On May 23, 2007, Judge Filip recused himself. Dkt. 43. The case was reassigned to Judge Norgle. Dkt. 33. This case is set for trial before Judge Norgle in Februrary 2010. *See* Dkt. 145. The case was referred to this Court in accordance with Local Rule 72.1. Dkt. 73.

## II. LEGAL STANDARDS

This Court will discuss the applicable motion *in limine* legal standards, and will then apply them to the fifteen motions *in limine*.

## A.      Motions *in Limine*

A motion *in limine* is a request for the court's guidance concerning an evidentiary question. *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999); *Kiswani v. Phoenix Security Agency, Inc.*, 247 F.R.D. 554, 557 (N.D. Ill. 2008).  The Court may give such guidance by issuing a preliminary ruling regarding admissibility.  *Wilson,* 182 F.3d at 570-71.  Trial judges are authorized to rule on motions *in limine* pursuant to their authority to manage trials, even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).  While judges have broad discretion when ruling on motions *in limine*, evidence may be excluded only when it is inadmissible on all potential grounds.  *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002)*; Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003).  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).  Thus, the party moving to exclude evidence *in limine* has the burden of establishing the evidence is not admissible for any purpose.  *Robenhorst v. Dematic Corp.*, 2008 WL 1821519, at *3 (N.D. Ill. April 22, 2008).

Denial of a motion *in limine* does not mean all evidence contemplated by the motion will be admitted at trial.  *Hawthorne*, 831 F. Supp. at 1401.  Rather, denial means the court cannot determine whether the evidence in question should be excluded outside of the trial context. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989).  A

ruling is not necessarily final. *Townsend*, 287 F. Supp. 2d at 872. "The ruling is subject to change when the case unfolds," particularly if the actual testimony differs from what was proffered. *Luce,* 469 U.S. at 41. "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41-42.

## B.    Evidence Admissibility

Rules 401, 402, and 403 of the Federal Rules of Evidence govern which evidence is relevant and admissible in a proceeding.  Relevant evidence is considered that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  The admissibility of evidence is characterized such that "[a]ll relevant evidence is admissible . . . Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Relevant evidence might be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  Fed. R. Evid. 404(b).

Rule 408 of the Federal Rules of Evidence 408 ("Rule 408") prohibits the admissibility of offers of, promises for, or completed settlement agreements. Fed. R. Evid. 408. Rule 408 does not require exclusion if offered for a permissible purpose. Fed. R. Evid. 408(a)(2). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(a)(2).

### III. DISCUSSION

**A.    Plaintiff's Motions *in Limine***

With its first five motions, Plaintiff seeks to exclude any evidence, testimony or argument regarding: (1) Cadant's lawsuit against Butler International, Inc. ("Butler"); (2) the Worldwide Financial I, L.P. ("Worldwide") suit against Frederick H. Kopko ("Kopko"), Jr., McBreen & Kopko ("McBreen") and Rimas Buinevicius ("Rimas"); (3) third party litigation filed against any of Cadant's founders and their affiliates; (4) third party litigation filed against Special Counsel for the Trustee; and (5) claims filed by Cadant common stockholders in the CDX Bankruptcy. Each of these issues will be addressed in order.

### 1.    Cadant's Lawsuit Against Butler International, Inc.

Plaintiff seeks to exclude any evidence, testimony, or argument regarding Cadant's lawsuit against Butler. Cadant's lawsuit against Buler came after Butler and Ed Kopko refused to voluntarily lift its lien on the sale proceeds after Cadant sold its assets to Arris. Plaintiff argues Cadant's lawsuit against Butler is non-probative and not admissible.

Defendants argue Cadant's lawsuit against Butler is relevant and should be admitted for three reasons: (1) the jury is entitled to hear about the obstructionist environment Defendants faced which forced them into litigation; (2) the conduct is consistent with other actions of obstruction which influenced Defendants' option and opportunities in later transactions; and (3) the Butler lien and lawsuit show bias of key Plaintiff witnesses. Defendants argue Cadant's lawsuit against Butler is relevant, admissible evidence because it provides context for Defendants' actions in late 2001 in connection with the Arris sale, and it goes to the bias and credibility of Plaintiff's witnesses, including Fred and Ed Kopko.

Defendants do not seek to offer at trial the $10,000 settlement between Arris and Butler. The negotiations and terms of the settlement agreement between Cadant, Arris, and Butler are not admissible in evidence pursuant to Rule 408. Defendants want to offer the refusal to release the lien, the lawsuit and the temporary restraining order. *Sunstar, Inc. v. Alberto-Culver Co., Inc.*, No. 01 C 0736, 2004 WL 1899927, at *22 (N.D. Ill. Aug. 23, 2004) ("Conduct or statements not a part of compromise discussions are not subject to Rule 408").

This Court grants Plaintiff's motion *in limine* to exclude any evidence, testimony, or argument regarding Cadant's lawsuit against Butler. Plaintiff brings two main claims against Defendants: (1) Defendants breached their fiduciary duty; and (2) Defendants conspired to engage in self-dealing. Cadant's lawsuit against Butler does not relate to the Arris sale. The fact Butler asserted a lien assertion does not change whether Defendants

breached their fiduciary duty. Difficulties in completing the sale to Arris based on the lien is not probative of the fiduciary duty or other issues the jury will decide. Absent evidence to make the Butler lawsuit relevant or probative during trial, the Butler and related lien lawsuit are not relevant and therefore not admissible.

## 2. Worldwide Financial I, L.P.'s Lawsuit against Frederick Kopko, et al.

Plaintiff seeks to exclude any evidence, testimony or argument made regarding Worldwide's lawsuit against Kopko, McBreen, and Rimas. Plaintiff argues the Worldwide lawsuit is inadmissible because the underlying issues in that case are not at issue in this case. Defendants do not intend to enter the settlement into evidence. Defendants argue Worldwide's lawsuit against Kopko, McBreen, and Rimas is relevant because it shows: (1) the expectations for what Cadant was worth at the sale to Arris; and (2) bias of witnesses.

This Court grants Plaintiff's motion to exclude any evidence, testimony or argument regarding Worldwide's lawsuit against Kopko, McBreen, and Rimas. Plaintiff agreed to stipulate to the $10 per share price of Cadant stock in the Worldwide transaction as in indication of value. Transcript, June 24, 2009, at p. 22-24. Therefore, the transaction at $10 per share may be proffered as evidence. The fact that litigation was instituted challenging the price is not probative: the mere fact that an individual sues thinking a price is unfair does not make it so. *Denson v. Northeast Illinois Regional Commuter Railroad Corp.*, No. 00 C 2984, 2003 WL 1732984 (N.D. Ill. March 31, 2003). "[T]he existence of other lawsuits is not evidence that any of the claims in those

lawsuits are true, and admission of those allegations would be prejudicial." *Davis v. Harris*, No. 03-3007, 2006 WL 3513918, at *3 (C.D. Ill. Dec. 5, 2006).

3. **Third Party Litigation Filed Against Any of Cadant's Founders and Their Affiliates or Filed Against Special Counsel for the Trustee.**

It should be noted that Plaintiff combined its arguments for motions three and four in oral arguments. Defendants argued similarly. Thus, this Court will determine Plaintiff's motions three and four in kind.

Plaintiff seeks to exclude any evidence, testimony or argument regarding third party litigation filed against any of Cadant's founders and their affiliates because the two lawsuits have no relation to Cadant but instead involve Butler: (1*) Carley v. Butler International* ("*Carley*"); and (2) *Old Oak Partners LLC v. Butler International* ("*Old Oak Partners*").

In *Carley*, stockholders sued Butler and its directors for claims arising out of Butler's efforts to obtain refinancing. The case was dismissed at the pleading stage without discovery. The defendants wish to proffer the *Carley* case to prove that Kopko and special counsel utlized bridge financing in their other ventures involving Butler. *Old Oak Partners* is a case involving allegations of breach of fiduciary duty; it was ultimately dismissed.

This Court grants Plaintiff's motion to exclude any evidence, testimony or argument regarding the two third party cases filed against Cadant's founders and their affiliates. Neither the *Carley* nor the *Old Oak Partners* lawsuit is relevant to the issues at hand. If, however, Plaintiff asserts the use of bridge financing is never an appropriate

financing mechanism, it may be appropriate to allow evidence of Plaintiff's past deals involving bridge financing. At that point, it would be Defendants' burden to actually show, contextually, a relevant comparison between the transaction at issue and a past deal.

**4.  Claims Filed by Cadant Common Stockholders in the CDX Bankruptcy**.

Plaintiff's fifth motion seeks to exclude any evidence, testimony, or argument regarding claims filed by Cadant common stockholders in the CDX bankruptcy. Plaintiff argues these claims are irrelevant and thus not admissible. Defendants argue the witnesses may provide "slanted" testimony and that the claims are directly relevant to the credibility of the witnesses.

This Court denies in part and grants in part Plaintiff's motion *in limine* regarding claims filed by Cadant common stockholders in the CDX bankruptcy. The fact of a witness' claim in the bankruptcy proceeding may be relevant to show bias or interest in the outcome of this case. However, no signed documents regarding the claim need be introduced. This Court denies Plaintiff's motion with respect to the fact of the claims; this Court grants Plaintiff's motion with respect to the claim documents.

**B.  Defendants' Motions *in Limine***

With its first ten motions, Defendants seek to exclude: (1) evidence regarding Defendants' conduct occurring *before* Defendants joined Cadant's Board of Directors ("Board") and Defendants' conduct or events at Arris occurring *after* Cadant sold its

assets to Arris; (2) opinion testimony from James Stern, John Ostojic, and Fred Kopko; (3) testimony about the meaning and application of legal obligations and fiduciary duties; (4) admission of the individual Defendants' compensation, employment benefits, and indemnification rights; (5) evidence of Defendants' size, wealth, or resources; (6) references to the Rockefellers, their wealth, or their connection to the Venrock Defendants; (7) references to other corporate scandals or infamous suits such as the Enron or the Worldcom litigation; (8) evidence of unrelated deals involving Venrock Associates and Venture Law Group; (9) admission of omnibus categories on Plaintiff's exhibit list; and (10) argument that Cadant's reincorporation under Delaware law was "fraudulent" or otherwise improper.

1.    **Defendants' Motion *in Limine* to Bar Evidence Regarding Defendants' Conduct Occurring Before Defendants Joined Cadant's Board and Defendants' Conduct or Events at Arris Occurring After Cadant Sold its Assets to Arris.**

Defendants' first motion requests the Court to exclude evidence of Defendants' conduct before Defendants were elected to Cadant's Board and after Cadant was sold to Arris. Defendants contend they only owed Plaintiff a fiduciary duty between the time of Defendants' appointment and Cadant's sale, rendering evidence outside that time frame irrelevant or likely to cause jury confusion.

a.    **Defendants' Motion to Exclude Evidence of Defendants' Conduct Before Defendants Joined Cadant's Board.**

Defendants argue that evidence of Defendants' conduct before the individual Defendants joined Cadant's Board is inadmissible because the evidence will not be

12

probative of the individual Defendants' alleged breach of fiduciary duty. Rather, Defendants claim that all evidence regarding their conduct before they assumed fiduciary obligations reasserts previously dismissed claims and will result in juror confusion. Defendants do not contest evidence that is both relevant and unrelated to Defendants' conduct, which occurred prior to Defendants' appointment to the Board.

Plaintiff intends to present evidence prior to Defendants' appointment to Cadant's Board to explain how Cadant evolved financially and how Cadant's founders relied on Defendants at various times. Specifically, Plaintiff would disclose the reasons Cadant's founding board accepted venture capital style preferred stock financing rather than common stock financing, why Venrock was chosen to lead the preferred stock round rather than other venture capital firms, what assurances Venrock provided Cadant's founding directors, and the nature of Mr. Copeland and Mr. Rochkind's appointment to Cadant's Board. Plaintiff claims this evidence will be proffered merely as an "aid to understanding," while Defendants argue such evidence would revive previously dismissed fraud and negligence claims.

Plaintiff may introduce evidence closely related to the dismissed fraud and negligence claims if the evidence is relevant to the surviving claims and not unduly prejudicial. *See Vernon v. Port Auth. of N.Y. and N.J.*, 200 F.Supp.2d 401, 403-04 (S.D.N.Y. 2002). Thus, for evidence regarding Defendants' conduct before Defendants joined Cadant's Board, the parties can explain how individuals became directors by virtue of the financing agreement. In addition, the parties may address the directors' deliberative

process, prior to the agreement, by explaining how directors came to make various decisions. However, the parties are precluded from asserting alleged assurances provided during the course of negotiations that are not embodied in the Series A written agreement.

Finally, Defendants argue that evidence of Defendants' conduct before the individual Defendants joined Cadant's Board is irrelevant because they could not technically breach fiduciary duties before they legally owed such obligations. The Court agrees. *See Premier Capital Mgmt, LLC v. Cohen*, No. 02 C 5368, 2008 WL 4378313, at *3 (N.D. Ill. Mar. 24, 2008) (Only conduct after the establishment of an actual director-shareholder relationship will constitute breach of fiduciary duty). In addition, evidence of Defendants' conduct before they owed a fiduciary duty would be improper if merely intended to demonstrate Defendants' propensity to breach a fiduciary duty. *Cf. Saudi Basic Industries Corp. v. Mobile Yanbu Petrochemical Co.*, No. 00C-07-161, 2003 WL 22048238, at *2 (Del. Super. Ct. Sep. 2, 2003) (Evidence offered toward the defendant's "internal state of mind regarding its supposed intentions," before a defendant owed a fiduciary duty, is precluded if intended to establish defendant would eventually breach a fiduciary duty). However, rather than excluding otherwise relevant evidence toward Plaintiff's claims merely because the evidence arose before Defendants assumed a fiduciary duty, the Court will take the remainder of Defendants' motion under advisement to be ruled on in the context of the evidence offered at trial. *See United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial,

but instead merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded).

Defendants' motion is denied in part and granted in part. While the Court grants the motion with respect to the parties' negotiations regarding the Series A financing agreement, the Court declines to preclude evidence arising prior to Defendants' fiduciary obligations that explains the outcome of the financing agreement or individual directors' deliberative process.

      **b.     Defendants' Motion to Exclude Evidence of Defendants' Conduct or Events at Arris Occurring After Cadant Sold Its Assets to Arris.**

Defendants also seek to exclude evidence of Defendants' conduct or events at Arris after January 8, 2002, because Plaintiff will purportedly offer evidence irrelevant to the liability phase of the bifurcated trial, including, but not limited to, Defendants' conduct during bankruptcy litigation, data regarding Arris' stock price, and Arris' financial performance after acquiring Cadant's inventory. Similar to Defendants' motion to exclude conduct before the individual Defendants joined Cadant's Board, Defendants argue that evidence subsequent to Defendants' fiduciary duty is not probative of whether a fiduciary breach occurred because Defendants allegedly owed no fiduciary duty to Plaintiff after Cadant's sale.

Plaintiff claims the events after Cadant's sale are probative of Defendants' alleged breach. Plaintiff intends to introduce post-sale evidence, related to Cadant's bankruptcy litigation and settlement agreements. Plaintiff argues the evidence brings into doubt the

legitimacy of Cadant's asset sale for stock, and shows that Defendants deliberately refused to sell the Arris stock so only the bridge lenders would receive value in Cadant's bankruptcy.

While the Court recognizes that liability for breach of fiduciary duty hinges on Defendants' conduct during its duration of service at Cadant, evidence is not limited to the duration of Defendants' tenure. The issue at trial is whether the post-sale evidence sheds light on Defendants' conduct as Board members. Post-sale evidence will be allowed to the extent it is relevant to explain Defendants' conduct as Board members.

Defendant's motion is granted with respect to Arris' financial performance after it acquired Cadant's assets and products. Arris' success or failure following the sale is not probative as to whether Defendants breached their fiduciary duty, unless Plaintiff can show that Defendants had actual knowledge of Arris' plans prior to the sale and failed to share such information with fellow directors in the course of their deliberations.

### 2. Defendants' Motion to Bar Opinion Testimony From James Stern, John Ostojic, and Fred Kopko.

Defendants seek to exclude testimony of lay witnesses James Stern ("Stern"), John Ostojic ("Ostojic"), and Fred Kopko ("Kopko") regarding their opinions on Cadant valuations at various points in time, legal conclusions, and the existence and scope of legal standards or duties. Defendants argue that Stern, Ostojic, and Kopko will proffer opinion testimony inadmissible under Rule 701 and improper under Rule 403. Notably, Defendants' argument that Stern, Ostojic, and Kopko should be precluded from testifying

because of Plaintiff's failure to disclose them as experts is moot because Plaintiff concedes these witnesses will not be called to testify as experts in the field of law.

Since Plaintiff insists Stern, Ostojic, and Kopko will testify as lay witnesses, their opinions must be rationally based on personal knowledge, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. Defendants believe Stern and Ostojic will not offer opinions based on first-hand knowledge required under Rule 701, while Plaintiff insists that all three witnesses will testify only when they have personal knowledge. Defendants are also concerned the witnesses will offer opinions based on technical or specialized knowledge.

Plaintiff will ask former Cadant Director Fred Kopko to testify regarding a memo he sent to Cadant's Board on July 10, 2000, suggesting that the Cadant Board take into account its fiduciary duties to its shareholders. While Plaintiff argues that Kopko's testimony concerning the memo is admissible to show Defendants had notice, Defendants contend the memo contains legal conclusions and reflects Kopko's specialized knowledge of the law.

Lay witnesses may draw on knowledge gained from professional experiences and testify regarding particularized knowledge they gained as employees of a business. *Compania Administradora v. Titan Int'l, Inc.*, 533 F.3d 555, 559-60 (7th Cir. 2008). Moreover, parties are prohibited from extracting expert testimony from lay witnesses in lieu of Rule 702 expert testimony. *See id.* at 561 (Parties are prevented from "proffering

an expert in lay witness clothing"). Based on a limited preview of the witness testimony, the Court accepts that Stern, Ostojic, and Kopko have room to testify regarding knowledge they gained by virtue of their positions with Cadant.

Accordingly, the motion is granted in part and denied in part. The motion is granted with respect to valuation opinions, Stern, Ostojic or Kopko testifying about what constitutes Delaware or Maryland law, and opinion testimony as to whether Defendant directors breached fiduciary duties. However, the motion is denied in that Mr. Kopko can explain why he wrote and submitted the memo to the Board and testify as to the his understanding at the time regarding what Maryland and Delaware law provided, to the extent he relied upon the understanding to inform his actions.

### 3. Defendants' Motion to Bar Testimony About the Meaning and Application of Legal Obligations and Fiduciary Duties.

Defendants also request that lay and expert non-lawyer witnesses be excluded from testifying as to whether Defendants' conduct complied with fiduciary duties or other legal requirements because such testimony is prohibited under Rule 704. Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704(a). However, Defendants' argue that Plaintiff's lay and expert witnesses are poised to offer "legal conclusions," rather than testimony toward "ultimate issue(s)."

Defendants seek to preclude Plaintiff's non-lawyer witnesses from testifying regarding compliance with legal standards. The witnesses will be permitted to characterize their own conduct but are barred from rendering opinions on the conduct of

others. Plaintiff's witnesses are precluded from rendering opinions on whether others breached fiduciary duty, complied with fiduciary obligations, or acted in good faith. *See Christiansen v. Nat'l Savings and Trust Co.*, 683 F.2d 520, 529 (D.C. Cir. 1982) ("Lay legal conclusions are inadmissible as evidence").

### 4. Defendants' Motion to Bar Admission of the Individual Defendants' Compensation, Employment Benefits, and Indemnification Rights.

Defendants move to exclude evidence regarding the monetary distribution, or "carry," that Defendants Oppenheimer, Copeland, and Walker would purportedly receive if their firms' investment in Cadant was profitable. Plaintiff concedes it will not present evidence regarding dollar amounts of salaries and employment benefits that the individual Defendants received from their employers; individual Defendants' indemnification rights; and evidence that the individual Defendants received payments from Cadant or obtained benefits from the company.

While Defendants argue the alleged "carry" is irrelevant because Cadant's performance, positive or negative, only had the potential for a "minuscule" and indirect effect on the Defendants' compensation, Plaintiff describes the "carry" as highly relevant toward Defendants' motivation to breach fiduciary duties. Under Rule 404(b), "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident..." Fed. R. Evid. 404(b). Regardless of the net effect the Cadant investment had on Defendants' "carry," Plaintiff claims the "carry"

illustrates the pressure Defendants faced to maximize profits and reveals Defendants'
motive to breach fiduciary duties.

Evidence should not be excluded before trial unless it is clearly inadmissible on all
potential grounds. *See Kiswani v. Phoenix Sec. Agency, Inc.*, 247 F.R.D. 554, 557 (N.D. Ill.
2008). Although the Court is uncertain Defendants' "carry" had anything more than an
indirect effect on Defendants' compensation and conduct, the evidence is relevant with
regard to Defendants' plausible motive. Accordingly, the motion is denied.

### 5.   Defendants' Motion to Bar Evidence of Defendants' Size, Wealth, or Resources.

Defendants want to limit references to the Defendants' size, wealth, revenues,
profits, and resources as irrelevant and unfairly prejudicial, unless otherwise stipulated to
by the parties. While Defendants argue references to their size, wealth and resources may
be irrelevant to the proceedings, they do not contest that Plaintiff can offer evidence related
to Defendants' investment portfolio, industry expertise, and reputation in the venture
capital industry. Defendants do oppose evidence of size, wealth or revenue that goes toward
Defendants' extensive wealth, or "deep pockets," and the reasonableness of non-defendant
Cadant founders, rather than Defendants' alleged breach of fiduciary duty.

Plaintiff will offer evidence that Cadant's founders conducted due diligence and
negotiated with several venture capitalists before selecting Venrock to lead the Series A
preferred stock round of financing.  Generally, Plaintiff intends to highlight Defendants'
size, wealth or resources as the reason Cadant's founders deferred financial authority to
Defendants. Plaintiff cites *Venture Associates Corp. v. Zenith Data Systems*, 1995 WL

151850, at *2 (N.D. Ill. Apr. 3, 1995) to support its position that Defendants' financial history is relevant. In *Venture,* the court permitted evidence of the defendant's financial history where the reasonableness of the defendant's conduct is at issue. *Id.* In this case, Plaintiff proposes evidence of Defendants' financial history for the purpose of establishing the reasonableness of Cadant's founders, who are not parties to this lawsuit.

Relevant evidence is considered that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Defendants do not believe the reasonableness of Cadant's founders makes Defendants' purported breach of fiduciary duty any more or less probable. Furthermore, Defendants are concerned Plaintiff will prove up the non-party Cadant founders' reasonableness in lieu of proving Defendants' breach of fiduciary duty.

Defendants' motion is granted in part and denied in part. The motion is granted in that Plaintiff is precluded from mentioning or suggesting that Defendants have "deep pockets." The motion is otherwise denied.

6. **Defendants' Motion to Bar References to the Rockefellers, their Wealth, or their Connection to the Venrock Defendants.**

Defendants seek to exclude references to the Rockefeller family's relationship with the Venrock Defendants because the evidence is irrelevant and unfairly prejudicial. Plaintiff argues that evidence of the Defendants' relationship with the Rockefeller family goes toward the reasonableness of Cadant's founders in selecting the Venrock Defendants

to lead Series A financing and that identification of the Rockefeller family and Rockefeller institutions is necessary to determine bias during the jury selection process.

Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In *Adams Laboratories*, the Seventh Circuit opined that appealing to the sympathy of jurors through references to defendant's relative wealth is improper if the wealth and size of defendant are not at issue in the case. *See Adams Laboratories, Inc. v. Jacobs Engineering Co., Inc.*, 761 F.2d 1218, 1226 (7th Cir. 1985). The Rockefeller family is not a party to this case and their wealth is not at issue. The Court fails to see the probative value of Rockefeller evidence. Accordingly, the motion is granted.

### 7. Defendants' Motion to Bar References to Other Corporate Scandals or Infamous Suits Such as the Enron or Worldcom Litigation.

Defendants' seventh motion *in limine* seeks to bar references to other corporate scandals or infamous suits. Defendants cite the Enron or Worldcom litigations as examples of such corporate scandals sought to be barred. Defendants argue that such references are not relevant and would be misleading and unduly prejudicial to Defendants.

Plaintiff argues Defendants' seventh motion *in limine* can be broken into two parts: (1) whether the Trustee may introduce evidence of other deals, corporate acts (both in the regular course of business and those involving corporate wrongdoing) in which Defendants were involved; and (2) whether the Trustee may introduce evidence of other corporate

22

scandals or wrongdoings which do not involve Defendants. Plaintiff further argues (1) is relevant to the Plaintiff's claim of conflict and probative of Defendants' adherence to industry practices; and (2) is relevant to determine the extent which defendants' actions conform or do not conform to real-world industry standards. The Court finds the introduction of evidence of other corporate scandals or infamous suits is not relevant and, even if relevant, highly prejudicial. *Sabratek Liquidating LLC v. KPMG LLP*, No. 01 C 9582, 2003 WL 22715820 (N.D. Ill. Nov. 18, 2003) ("the improper conduct of other firms . . . has little, if any relevance to KPMG's conduct at issue . . . [and] [t]he probative value of references to the accounting scandals of the past few years is substantially outweighed by the risk of unfair prejudice that could be given to such evidence by the jury"). Defendants' seventh motion *in limine* is granted and Plaintiff is barred from referencing other corporate scandals or infamous suits.

### 8. Defendants' Motion *in Limine* to Bar Evidence of Unrelated Deals Involving Venrock Associates and Venture Law Group.

Defendants' eighth motion *in limine* seeks to bar evidence of unrelated deals involving Venrock Associates and Venture Law Group ("VLG"). On January 1, 2005, VLG was dismissed from this case with prejudice by Judge Wedoff. Defendants argue evidence of unrelated deals involving Venrock and VLG are irrelevant and, in the alternative, prejudicial. First, Defendants argue that evidence of other Venrock investments involving VLG is irrelevant and prejudicial. Second, Defendants argue evidence of other Venrock investments involving VLG would be inadmissible under FRE 602. And third,

Defendants argue evidence of other Venrock investments involving VLG would be inadmissible under FRE 901.

Plaintiff argues that the probative value of the evidence substantially outweighs the prejudicial effect. Fed. R. Evid. 403. Plaintiff argues the evidence of deals involving Venrock and VLG demonstrate a conflict not only based upon VLG representing Venrock portfolio companies, but also VLG participating directly in Venrock financings of the very companies VLG was asked to represent. Plaintiff argues that Judge Wedoff's dismissal upholding an arbitration clause in VLG's retainer agreement was not based on any substantive review of VLG's conduct and occurred prior to discovery. Plaintiff also argues that the extent of the conflict is important to understanding the issue at hand in this case. This Court disagrees.

Defendant's eighth motion *in limine* is granted. Judge Wedoff dismissed VLG from this case with prejudice on January 1, 2005, pursuant to an arbitration clause. Judge Wedoff made no findings on the merits. VLG is not probative as to whether Defendants breached their fiduciary duty or as to whether Defendants conspired to engage in self-dealing.

### 9. Defendants' Motion to Bar Admission of Omnibus Categories on Plaintiff's Exhibit List

Defendants' ninth motion *in limine* seeks to bar admission of omnibus categories on Plaintiff's exhibit list. This Court will provide some background to this omnibus motion *in limine*. In May 2008, the Court ordered parties to submit their joint pretrial orders by August 25, 2008. Each party could object to the opposing party's exhibits; the opposing

party must then provide a response to each objection. Plaintiff's rendered exhibit list also includes thirty-four grouped exhibits, each a different document in the lawsuit.

Defendants request Plaintiff's exhibit list of 34 group exhibits be stricken. Defendants argue that Plaintiff's grouped exhibits "pervert the pretrial process" by generalizing discovery documents, concealing documents to be used at trial, frustrating Defendants' abilities to object to the documents, and precluding this Court from determining admissibility.

This Court prefers each party to designate as trial exhibits those exhibits the party affirmatively intends to use in its case in chief. Exhibits for other purposes - e.g. used for impeachment purposes—do not need to be identified as trial exhibits prior to trial. However, those documents must be produced in discovery to avoid surprises. Defendants' motion *in limine* is granted. In the event of later issues, the parties may return to this Court for assistance.

### 10. Defendants' Motion to Preclude Argument That Cadant's Reincorporation under Delaware Law Was "Fraudulent" or Otherwise Improper.

Defendants seek to preclude Plaintiff from arguing that an aspect of the proxy statements—Cadant's reincorporation from Maryland to Delaware—was fraudulent or otherwise improper. Defendants argue Judge James F. Holderman rejected this argument in November 2002—and that the Seventh Circuit upheld that ruling in *Kennedy v. Venrock Assocs.*, 348 F.3d 584 (7th Cir. 2003). In light of those rulings, Defendants maintain

Plaintiff should not have another chance to litigate the issue. In response, Plaintiff charges Defendants misstated, mischaracterized, and failed to fully disclose those holdings.

Defendants argue Plaintiff fails to address its cited authorities which show that this Court should take judicial notice of the Seventh Circuit's and Judge Holderman's ruling under Rule 201 of the Federal Rules of Evidence. *See Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996). Plaintiff maintains the Seventh Circuit never addressed the issue whether the proxy statement, although possibly independent and not deceptive, was not part of a scheme to steal corporate assets. Defendants take issue with Plaintiff's contention that the relevant rulings noted above are in dispute, urging that both courts found Cadant's reincorporation under Delaware law was not fraudulent.

This Court recently addressed Defendants' interpretation of *Kennedy* in *CDX Liquidating Trust v. Venrock Associates*. 389 B.R. 76, 84 (N.D. Ill. 2008). As this Court explained, in *Kennedy*, according to Defendants, a group of Cadant common shareholders represented by Plaintiff's counsel brought direct claims against these same Defendants that were nearly identical to the claims in the current action, including the claims that Cadant's Board "fraudulently" decided to reincorporate in Maryland and failed to include biographical information in its proxy statement. *Id.* District Judge James F. Holderman previously dismissed the *Kennedy* complaint because its claims belonged to Cadant, not to the individual shareholders, and the Seventh Circuit affirmed on that basis and also rejected a number of Plaintiff's substantive theories, including the theory that JP Morgan and Venrock had an agreement or conspiracy to "control Cadant." *Id.* (quoting *Kennedy*, 348

F.3d at 591-92) (stating that Defendants made no such agreement or conspiracy)).   In

addition, prior to this time, Bankruptcy Judge Eugene R. Wedoff dismissed nine of the

seventeen counts of Plaintiff's adversary complaint, a number of which were dismissals on

the merits including Plaintiff's fraud claims.

As this Court found in *CDX Liquidating Trust v. Venrock Associates* in the context

of bifurcation:

> the Court in *Kennedy* specifically addressed the weaknesses in
> Plaintiff's allegations that Defendants conspired or were in
> agreement with one another to control Cadant.  The Court's
> opinion in *Kennedy*, along with Judge Wedoff's concerns
> regarding how the conspiracy claim was plead, demonstrate a
> reasonable likelihood that Plaintiff may not succeed in
> proving liability for all claims against all Defendants.

*CDX Liquidating Trust,* 389 B.R. at 84.

Specifically, in *Kennedy*, the Seventh Circuit found:

> The key allegation in the complaint against the director
> defendants is that they 'submitted a proxy statement to the
> common stockholders of Cadant containing material
> omissions and misstatements, *for the purpose of removing
> control of Cadant from the common stockholders* . . . . The
> only 'removal of control' charged is the reincorporation of
> Cadant in Delaware, which reduced the shareholders' control
> over certain transactions.  As to that, the shareholders could
> not be deceived, because the proxy statement described the
> consequences of reincorporation at great length.  All the other
> charges in the complaint involve injury to the corporation.
> The common shareholders were injured by that injury, but
> that makes their claim against th defendants, the injurers,
> indirect and so bars their prosecuting the claim outside of the
> bankruptcy proceeding.

*Kennedy*, 348 F.3d at 594-595 (emphasis in original).

Defendants next argue Plaintiff's suggestion it has never been afforded the opportunity to present arguments and evidence on the claim is disingenuous, pointing out that the same lawyers who represent Plaintiff represented the *Kennedy* plaintiffs, who now comprise the driving force behind the current lawsuit. Moreover, Defendants highlight the fact that the same document is at issue—Cadant's November 2000 proxy statement. As discussed above, this Court agrees. Indeed, the complaints are virtually identical, as are the claims and the legal arguments.

With respect to Defendants' collateral estoppel argument, Defendants claim Plaintiff creates a straw man instead of addressing the issue. First, Plaintiff allegedly pretends the issue is whether Cadant's reincorporation under Delaware law was part of a scheme to steal corporate assets instead of whether Cadant's reincorporation under Delaware law was fraudulent or otherwise improper. As set out above, that issue was decided in the negative in *Kennedy*. *Kennedy*, 348 F.3d at 591, 592, 594. Second, Plaintiff fails to support its claim that the issue was not litigated, as a claim need not actually reach trial to be litigated. *See La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir. 1990) (ruling on motion to dismiss suffices); *Kunzelman v. Thompson*, 799 F.2d 1172, 1177 (7th Cir. 1986) (opportunity to brief and argue issue suffices). Indeed, the Seventh Circuit specifically held the Trustee's "fraudulent… reincorporation" argument failed "on the merits." *Kennedy*, 348 F.3d at 594.

As to the third collateral estoppel factor, Defendants contend Plaintiff concedes by its silence that the Seventh Circuit's determination of the fraudulent reincorporation issue

was essential to its ruling in that Plaintiff contests only whether the Seventh Circuit determined, among other things, whether omissions in the proxy statements of director biographies and whether the proxy statement were part of a scheme to steal corporate assets. The Seventh Circuit's determination directly informed its holding that the *Kennedy* plaintiffs could not show special injury so as to save their claims from dismissal. *See Kennedy*, 348 F.3d at 594-95. Fourth, and finally, Defendants challenge Plaintiff's claim that its interests were not fully represented in the earlier action, urging Plaintiff fails to show any concrete differences between its interests here and its lawyers' interests in *Kennedy*. Defendants claim this is for good reason, as the common shareholders are the driving force behind Plaintiff's lawsuit and other entities are Defendants in this case. This Court agrees with Defendants.

In sum, this Court finds it is appropriate to preclude Plaintiff from arguing or suggesting at trial that Cadant's reincorporation from Maryland to Delaware was fraudulent or otherwise improper. Thus, Defendants' tenth motion *in limine* is granted.

## IV.  CONCLUSION

For the reasons set forth in open court and more fully explained in this opinion, Plaintiff's motions *in limine* are granted in part and denied in part; and Defendants' motions *in limine* are granted in part and denied in part.

SO ORDERED THIS 23rd DAY OF JULY, 2009.

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

James A.  McGurk
Law Offices of James A.  McGurk, P.C.
140 South Dearborn Street, Suite 404
Chicago, IL 60603

Hugh G.  McGreen
Brian Hogan
McBreen & Kopko
20 North Wacker Driver, Suite 2520
Chicago, IL 60606

Richard C.  Leng
Law Offices of Richard C.  Leng
330 West Main Street
Barrington, IL 60010

Counsel for Plaintiff

Thomas O,.  Kuhns
Thomas A.  Tozer
Matthew T.  Regan

Gabor Balassa
Melissa K.  Grouzard
Kirkland and Ellis LLP
300 North LaSalle
Chicago, IL 60654

David A.  Rammelt
Dawn M.  Beery
James M.  Reiland
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60601


Counsel for Defendants