# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **CDX LIQUIDATING TRUST** ) | |
| **BY THE CDX LIQUIDATING TRUSTEE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | Case No.: 04 C 7236 |
| ) | |
| **VENROCK ASSOCIATES,** *et al.*, ) | Honorable Charles R. Norgle |
| ) | |
| **Defendants.** ) | |

---

## DEFENDANT ERIC COPELAND'S MOTION
## FOR JUDGMENT AS A MATTER OF LAW

---

Thomas O. Kuhns (Bar No. 6180234)
Matthew T. Regan (Bar No. 6230106)
Gabor Balassa (Bar No. 6242469)
Melissa K. Grouzard (Bar No. 6286288)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:     (312) 862-2302
Facsimile:     (312) 862-2200

*Counsel for Defendants Eric Copeland,
C.H. Randolph Lyon,
Stephan Oppenheimer, and
Charles Walker*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| STANDARD OF REVIEW | | 1 |
| ARGUMENT | | 2 |
| I. | Plaintiff Has Failed To Prove Copeland Violated His Fiduciary Duty Of Loyalty | 3 |
| | A. The Board's Decisions On The ADC Letter, The CIG Term Sheet, And The Bridge Loans Were Approved By A Majority Of Disinterested Directors. | 3 |
| | B. Copeland Had No "Actual Conflict" In Voting For The Arris Sale Because Cadant Had No Viable Alternatives. | 6 |
| | C. Plaintiff Has Not Overcome The Business Judgment Rule's Presumption That Copeland Acted In Good Faith. | 8 |
| II. | Plaintiff Has Failed To Prove Copeland Violated His Fiduciary Duty Of Care | 9 |
| | A. Cadant's Articles Of Incorporation Protect Copeland From Personal Liability For The Alleged Breaches Of The Duty Of Care. | 9 |
| | B. Failing To Accept Or Respond To An Acquisition Proposal Is Not A Breach Of The Duty Of Care Under Maryland Law. | 10 |
| III. | Plaintiff Has Failed To Prove That Copeland Participated In A Conspiracy To Violate Fiduciary Duties. | 10 |
| CONCLUSION | | 11 |

# INTRODUCTION

In this case, plaintiff seeks to hold certain directors liable for business judgments made by Cadant's entire Board of Directors in 2000 and 2001. Of Cadant's 11 directors during that period, plaintiff has elected to sue four -- Eric Copeland, C. H. Randolph Lyon, Charles Walker, and Stephan Oppenheimer -- who served at different times on Cadant's Boards. In its claims against these individuals, the Trust attempts to revisit the Board's business decisions regarding (i) an April 2000 letter from a third party, ADC Telecommunications ("ADC"), expressing interest in possibly acquiring Cadant; (ii) proposed term sheets from the Chicago Investor Group ("CIG") and Chase Capital Partners ("Chase") in late 2000; (iii) bridge loans in early 2001 that saved Cadant from running out of cash; and (iv) the sale of Cadant's assets to Arris Group, Inc. ("Arris") in late 2001.

Having concluded its case in chief, plaintiff has failed to present sufficient evidence from which a reasonable jury could find for plaintiff on its claims against Eric Copeland or any of the other directors who have been targeted in this lawsuit. Plaintiff's claims fail essentially for two straightforward reasons:

- Copeland's relationship with Venrock was *disclosed* to the Board, and a majority of the Board's disinterested directors approved each transaction in which Copeland was allegedly conflicted.

- The *exculpatory provision* in Cadant's Articles of Incorporation bars plaintiff's breach of duty of care claims.

Thus, judgment as a matter of law should be entered in Copeland's favor.

# STANDARD OF REVIEW

"[A] court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)

1

(quoting Fed. R. Civ. 7P. 50(a)). Although "the court must draw all reasonable inferences in favor of the nonmoving party," *Reeves*, 530 U.S. at 149, the court must also give credence to "evidence supporting the moving party that is uncontradicted and unimpeached." *Id.* at 151 (quotation omitted); *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007). On a Rule 50 motion, the Court may consider testimony from witnesses associated with the moving party. *See*, *e.g.*, *Hossack*, 492 F.3d at 860-63 (relying on testimony of defendant's CEO in affirming order granting defendant's Rule 50 motion); *see also Traylor v. Brown*, 295 F.3d 783, 790-91 (7th Cir. 2002) (*Reeves* does not require court to ignore uncontroverted testimony of witnesses associated with the moving party). To defeat a Rule 50 motion, the plaintiff must present "more than a mere scintilla of evidence to support [its] case." *Zimmerman v. Chicago Bd. of Trade*, 360 F.3d 612, 623 (7th Cir. 2004). Judgment as a matter of law is proper if no reasonable jury could find for the plaintiff on all essential elements of its claim. *Harper v. Albert*, 400 F.3d 1052, 1061 (7th Cir. 2005).

## ARGUMENT

The Business Judgment Rule, well-established under Delaware and Maryland law, protects corporate directors from after-the-fact challenges to board decisions. *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993); *Wittman v. Crooke*, 707 A.2d 422, 425 (Md. 1998). "The rule posits a powerful presumption in favor of actions taken by the directors in that a decision made by a loyal and informed board will not be overturned by the courts unless it cannot be attributed to any rational business purpose." *Cede*, 634 A.2d at 361 (internal quotations omitted). Thus, in order to prevail, plaintiff must prove that the individual defendants, in reaching the challenged decisions, breached either their duty of care or their duty of loyalty. *Cede*, 634 A.2d at 361; *see also Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006) (good faith is encompassed within the duty of loyalty). Plaintiff has not and cannot overcome

2

the high hurdles that the Business Judgment Rule imposes.

I.      **Plaintiff Has Failed To Prove Copeland Violated His Fiduciary Duty Of Loyalty**

To overcome the Business Judgment Rule's presumption that Copeland satisfied his duty of loyalty, plaintiff must prove, for each challenged action, that Copeland was "interested" or acted in bad faith. *See Stone*, 911 A.2d at 369-70; *Cede*, 634 at 361; *Hudson v. Prime Retail, Inc.*, 2004 WL 1982383, at *11 (Md. Cir. Ct. Apr. 1, 2004). A director is "interested" with regard to a particular transaction if he is on both sides of the transaction or expects to derive a material benefit from the transaction not shared by the stockholders generally. *Hudson*, 2004 WL 1982383, at *12; *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002). The actions of an interested director, however, are still protected by the Business Judgment Rule if "[1] the interested director fully discloses his interest and [2] a majority of the disinterested directors ratify the interested transaction." *Cooke v. Oolie*, 2000 WL 710199, at *13 (Del. Ch. May 24, 2000); *accord Benihana of Tokyo, Inc. v. Benihana, Inc.*, 906 A.2d 114, 120 (Del. 2006).

   A.   **The Board's Decisions On The ADC Letter, The CIG Term Sheet, And The Bridge Loans Were Approved By A Majority Of Disinterested Directors.**

It is undisputed that throughout Copeland's tenure on Cadant's Board, his relationship with Venrock was known by Cadant's Board. (*See e.g.*, DX 170, 177-78 (Series A Closing Binder, nominating Copeland as Venrock's representative on Cadant's Board)); DX 520, 2; Trial Tr. vol. 16, 3294:6-11 (testimony of J. Vohra)) It is also undisputed that Cadant's Board expected Venrock, a Series A investor, to participate if another round of financing occurred. (*See* JTX 143, 8; Trial Tr. vol. 8, 1370:18-24 (testimony of V. Majeti), vol. 11, 2177:4-9 (testimony of E. Copeland), vol. 14, 2930:23-2931:6 (testimony of R. Lyon) Nor is there any question that by, January 2001, the Board expected Venrock to participate, along with J.P. Morgan Partners and other investors, in the First Bridge Loan. (*See* DX 527, 6 (First Bridge

3

term sheet))  Then, by May 2001, the Board expected Venrock to participate in Second Bridge Loan.  (DX 662, 6 (Second Bridge term sheet))

The record evidence further shows that directors Venkata Majeti, Fred Kopko, Jay Vohra, Mark Rochkind, and Randy Lyon were disinterested with respect to the decisions in which they each participated as a Cadant Board member.  Plaintiff has offered no evidence to suggest that Kopko, Vohra, or Rochkind were in any way improperly "interested" in any of the challenged transactions.[1]  Plaintiff has suggested that Majeti somehow lacked independence from Copeland, but has failed to present evidence from which a reasonable juror could conclude that Majeti, Cadant's founder, largest shareholder, President, CEO, and Board Chairman, was "beholden" to Copeland or was so under his influence that Majeti's "discretion would be sterilized," as required to prove a lack of independence.  *See Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993).  Finally, as addressed in Randy Lyon's Motion for Judgment as a Matter of Law, filed simultaneously with this motion, plaintiff has failed to present evidence establishing that Lyon was "interested" in any of the challenged transactions.  (*See* C.H. Randolph Lyon's Mot. for J. as a Matter of Law, Part II.A)

Thus, the following actions were approved by a majority of Cadant's informed, disinterested directors:

<u>Cadant's Response to ADC's Letter</u>.  In April 2000, at least four of the five members of Cadant's Board approved Cadant's response to ADC's April 11, 2000 letter indicating preliminary interest in possibly acquiring Cadant.  Majeti drafted a proposed response, solicited input from the other Directors, and revised the response based on their comments.  (*See* DX 11;

---

[1]  To the contrary, Vohra, one of plaintiff's witnesses, testified that, for each vote, he informed himself of "all the material issues and information" and "exercised [his] own personal business judgment as a director."  (Trial Tr. vol. 16, 3376:9-13, 3377:13-3377:15)

4

DX 21; Trial Tr. vol. 8, 1545:7-12 (testimony of V. Majeti))  The contemporaneous email record likewise shows that Rochkind and Copeland responded to Majeti with suggestions.[2] (*See* DX 14; DX 15; DX 16; DX 17; DX 20)  Kopko also received a copy of Majeti's proposed response. (*See* JTX 104; DX 12; DX 13)  And Majeti testified that before he sent to ADC the final version of Cadant's response, he secured each director's approval.  (Trial Tr. vol. 8, 1554:24-1555:7; *see also* DX 22/JTX 106; DX 17; DX 22/JTX 106)

Cadant's Rejection of the CIG Term Sheets in Favor of the Chase Term Sheet.  The undisputed record shows that in the Fall of 2000, Cadant's Board engaged in extensive deliberations about term sheets from CIG and Chase for a potential Series B financing.  After nearly two months of deliberations and negotiations, at least three of the Board's four disinterested directors -- Majeti, Rochkind, and Lyon -- favored the Chase term sheet.  The record evidence shows:

- While Majeti never accepted any of CIG's term sheets, he signed the Chase term sheet on Cadant's behalf.  (JTX 217, 9; *see also* Trial Tr. vol. 9, 1736:25-1737:24 (testimony of V. Majeti))

- Rochkind favored the Chase term sheet over the one from CIG.  In his October 26, 2000 email to the Board, he unequivocally stated his displeasure with the CIG term sheet: "BOTTOM LINE: DO WHAT WE HAVE TO TO GET A TERM SHEET FROM ANOTHER GROUP - EVEN AT SOMEWHAT LOWER VALUATION."  (JTX 183, 1; *see also* JTX 189, 1))  Later, in his December 3, 2000 email to the Board, Rochkind voiced his approval of the Chase term sheet, stating: "Well done.  Seems reasonable."  (JTX 221)

- Lyon concluded that the CIG term sheet was unreasonable because it included,

---

[2] Copeland, like the other directors had no improper "interest" in the Board's response to ADC.  Neither he nor Venrock had any financial interest in ADC.  And it is undisputed that the Series A preferred stock that Venrock and others held would have convert to common stock if ADC had acquired Cadant.  (Trial Tr. vol. 6, 1083:25-1084:2 (testimony of F. Kopko); *see also* DX 170, 31 (Series A Closing Binder))  Thus Copeland, Venrock, and the other preferred shareholders, had the same interest as Cadant's other shareholders in having Cadant sold for full value.  (Trial Tr. vol. 12, 2329:20-2330:12 (testimony of E. Copeland))  *See Hudson*, 2004 WL 1982383, at *12 (to be "interested," director must derive benefit not shared by stockholders generally); *Orman*, 794 A.2d at 23 (same).

5

among other things, a "3x liquidation preference." (Trial Tr. vol. 15, 3059:25-3062:1) By contrast, Lyon approved of the Chase term sheet, writing in a December 4, 2000 email: "Thanks for your good work on the termsheet. Well done." (DX 457, 1; *see also* Trial Tr. vol. 9, 1739:21-23 (testimony of V. Majeti), vol. 15, 3061:14-3062:1 (testimony of R. Lyon))

Board Approval of the Bridge Loans. The First and Second Bridge Loans were unanimously approved by the Board's disinterested directors. Copeland and Walker did not participate in the January 10, 2001 vote on the First Bridge Loan.[3] Although Rochkind expressly supported that bridge loan,[4] he was traveling overseas and therefore did not participate in the vote, either. (*See* Trial Tr. vol. 10, 1923:17-1924:4 (testimony of V. Majeti)) The directors who did participate -- Majeti, Vohra, and Lyon -- were all disinterested and voted unanimously to approve the term sheet First Bridge Loan. (DX 527, 2-4) Similarly, with Copeland, Walker, and Oppenheimer abstaining, Majeti, Vohra, and Lyon voted unanimously to approve the May 22, 2001 term sheet for the Second Bridge Loan. (DX 662, 2-3; Trial Tr. vol. 15, 3080:1-3081:11 (testimony of R. Lyon), vol. 16, 3222:17-3223:19 (testimony of J. Vohra)) Because plaintiff has presented no evidence from which a reasonable jury could conclude that Majeti, Vohra, and Lyon were "interested" in either bridge loan, plaintiff's duty of loyalty claims concerning those transactions fail as a matter of law.

### B. Copeland Had No "Actual Conflict" In Voting For The Arris Sale Because Cadant Had No Viable Alternatives.

To overcome the Business Judgment Rule's presumption that Copeland acted in Cadant's best interests in voting to approve the sale of Cadant's assets to Arris, plaintiff must present

---

[3] Copeland's abstention from these votes provides an independent basis for granting judgment as a matter of law. After all, an interested director cannot breach his duty of loyalty if he does not participate in the challenged Board vote. *In re Radnor Holdings Corp.*, 353 B.R. 820, 844-45 (Bankr. D. Del. 2006).

[4] *See* JTX 241, 4 (12/31/00 email from M. Rochkind to Cadant Board stating, "I support the Bridge arrangements outlined by Eric and affirmed by Venkata. I support including Chase on the Board. I support Eric's communicating directly with other potential investors.")

6

evidence that an "*actual conflict*" existed. *Cooke v. Oolie*, 2000 WL 710199, at \*12 (Del. Ch. May 24, 2000); *accord Blackmore Partners, L.P. v. Link Energy LLC*, 2005 WL 2709639, at \*6 (Del. Ch. Oct. 14, 2005). In *Cooke*, plaintiffs argued that because two defendant board members who had been involved in seeking acquisition proposals were also creditors of the company, these board members were "interested." 2000 WL 710199, at \*12. The court agreed with plaintiffs that the directors' position as lenders created the "potential for a conflict," but explained that the mere *potential* for a conflict of interest was insufficient. *Id.* Rather, to prevail on their claims, plaintiffs in *Cooke* had to establish an "*actual conflict*" by showing the directors chose an offer that benefited the creditors at the expense of the shareholders when *"compared to the other proposals available"* to the company. *Id.* (emphasis added). Because plaintiffs had failed to show another offer that was harsher to the creditors than the one the Board had accepted, the Court held "as a matter of law, that the plaintiffs have failed to demonstrate actual interest and, therefore, have failed to rebut the business judgment rule." *Id.* at \*13.

The same is true here. As in *Cooke*, plaintiff here has failed to establish an "actual conflict." Given that (i) after engaging Goldman Sachs for ten months and Thomas Weisel Partners for six months, the Arris transaction was the *only* acquisition proposal the company received (*see* JTX 366, 24-25; JTX 402, 22-25; Trial Tr. vol. 6, 1126:22-1127:6-15 (testimony of F. Kopko), vol. 9, 1756:22-1758:5 (testimony of V. Majeti)), and (ii) Cadant was on the verge of exhausting the last of its remaining cash, the Board members understood their only viable choices were to sell Cadant's assets to Arris or to shut down the business completely.[5] (Trial Tr.

---

[5] TWP also provided a fairness opinion that the price Cadant would receive from Arris was fair, and the directors relied both on that opinion and on Goldman and TWP's reports concerning their fruitless efforts to identify alternative acquirers or financing. (*See* JTX 352, 7-9; JTX 366, 24-25; JTX 402; DX 954; Trial Tr. vol. 12, 2408:4-19 (testimony of E. Copeland), vol. 13, 2692:3-10 (testimony of S. Oppenheimer); 3/10/10 p.m. Trial Tr. 91:6-18 (testimony of C. Walker)) "By statute a director is fully protected in relying in good faith on reports to the corporation made by an appraiser selected with

7

vol. 12, 2407:12-24 (testimony of E. Copeland), vol. 13, 2639:4-22 (testimony of S. Oppenheimer); 3/10/10 p.m. 91:6-10 (testimony of C. Walker))  Because there were no "other proposals" in January 2002, plaintiff's duty of loyalty claim concerning the Arris sale fails.[6] *Cooke*, 2000 WL 710199, at *12.

### C. Plaintiff Has Not Overcome The Business Judgment Rule's Presumption That Copeland Acted In Good Faith.

"[T]he Business Judgment Rule creates a presumption that a director acted in good faith." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 755 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006). "In order to overcome that presumption, a plaintiff must prove an act of bad faith by a preponderance of the evidence." *Id.* "A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate [the] applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Id.*  Plaintiff has offered no evidence of bad faith by Copeland in this case.

---

reasonable care." *Kaplan v. Goldsamt*, 380 A.2d 556, 568 (Del. Ch. 1977) (citing 8 Del.C. § 141(e)). "In the area of valuation, wide discretion is allowed to directors, and as long as they appear to act in good faith, with honest motives, and for honest ends, the exercise of their discretion will not be interfered with by the courts." *Id*.

[6] Plaintiff's witness Michael Barclay testified that GunnAllen was "looking to put up an additional $10 million" in Cadant in December of 2001. (3/8/10 p.m. Trial Tr. 72:16-22)  On cross-examination, however, Barclay conceded that GunnAllen never submitted a written offer to Cadant. (3/8/10 p.m. Trial Tr. 86:9-10; 3/9/10 a.m. Trial Tr. 2:10-12))  Further, GunnAllen had not actually secured the $10 million to invest, and, indeed, had not spoken to any potential investor about investing in Cadant. (3/9/10 a.m. Trial Tr. 6:10-7:3))  Barclay also admitted that, depending on Cadant's financials, that GunnAllen may not have been willing to make any investment in Cadant. (3/9/10 a.m. Trial Tr. 4:17-5:18)  Thus, Cadant's Board had no ability to compare GunAllen's hypothetical investment with the *actual* offer from Arris.

## II. Plaintiff Has Failed To Prove Copeland Violated His Fiduciary Duty Of Care

### A. Cadant's Articles Of Incorporation Protect Copeland From Personal Liability For The Alleged Breaches Of The Duty Of Care.

Both Delaware and Maryland law allow corporations to exculpate their directors from personal liability for breaches of the duty of care. Section 102(b)(7) of the Delaware General Corporation Law provides that a corporate charter may limit director liability for duty of care violations. *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 239 (Del. 2009); *In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 810 (7th Cir. 2003); *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 777, 798-99 (Del. Ch. 2004). Section 5-418 of the Maryland Code is even broader, authorizing corporations to "restrict director monetary liability to situations involving active and deliberate dishonesty or the actual receipt of an improper benefit." *Grill v. Hoblitzell*, 771 F. Supp. 709, 712 (D. Md. 1991); *accord Hayes v. Crown Cent. Petroleum Corp.*, 78 Fed. App'x 857, 865 (4th Cir. 2003). Given the prevalence of these provisions, "in most instances money damages are unavailable to a plaintiff who could theoretically prove a duty of care violation." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 750 (Del. Ch. 2005) (Chandler, J.), *aff'd*, 906 A.2d 27 (Del. 2006).

It is undisputed that Cadant's Articles of Incorporation contained provisions exculpating Cadant's Directors from personal liability to the fullest extent permitted by Maryland law (through December 31, 2000) and by Delaware law (starting January 1, 2001). (*See* DX 58, 8 (Maryland Articles of Incorporation); DX 504, 36 (Delaware Articles of Incorporation)) These provisions protect Copeland from personal liability for alleged breaches of the duty of care.[7]

---

[7] The Maryland provision further protects Copeland from liability for alleged breaches of his duty of loyalty for any conduct in 2000 (while Cadant was incorporated in Maryland), because plaintiff has failed to present evidence that Copeland engaged in "active and deliberate dishonesty" or actually received "an improper benefit" in 2000. Md. Code, Courts Judicial Proceedings § 5-418.

### B. Failing To Accept Or Respond To An Acquisition Proposal Is Not A Breach Of The Duty Of Care Under Maryland Law.

In addition, Maryland's director liability statute makes clear that not accepting or responding to an acquisition proposal does not constitute a breach of the duty of care: "*The duty of the directors of a corporation does not require them to… [a]ccept, recommend, or respond on behalf of the corporation to any proposal by an acquiring person.*" Md. Code, Corps. & Ass'ns, § 2-405.1(d) (emphasis added). Thus, plaintiffs' argument concerning the Board's purported failure to respond to ADC is not only factually wrong, but, under Maryland law, the failure to respond would not support plaintiff's claim for breach of duty of care. *Cf. Paramount Commc'ns., Inc. v. Time Inc.*, 571 A.2d 1140, 1154 (Del. 1990) ("Directors are not obliged to abandon a deliberately conceived corporate plan for a short-term shareholder profit unless there is clearly no basis to sustain the corporate strategy.").

### III. Plaintiff Has Failed To Prove That Copeland Participated In A Conspiracy To Violate Fiduciary Duties.

Although it has asserted a conspiracy claim against Copeland, plaintiff has made no attempt to define the purported participants in that conspiracy, when the conspiracy supposedly occurred, or what agreement was allegedly reached between Copeland and others. To prove that Copeland conspired to breach a fiduciary duty, plaintiff must prove, at a minimum: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3) a knowing participation in that breach by the [co-conspirators]." *Weinberger v. Rio Grand Industries, Inc.*, 519 A.2d 116, 131 (Del. Ch. 1986); *accord Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 428 (Md. 2009); *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.* 665 A.2d 1038, 1045 (Md. 1995). Plaintiff's conspiracy claim fails as a matter of law.

*First*, plaintiff has failed to prove "a breach of the fiduciary's duty." *Weinberger*, 519 A.2d at 131. Specifically, plaintiff has presented no evidence from which a reasonable jury

could conclude that Copeland or any other individual defendant breached his fiduciary duties to Cadant. (*See* Motions for Judgment as a Matter of Law for C.H. Randolph Lyon, Stephan Oppenheimer, and Eric Copeland). In addition, because the entity defendants owed no fiduciary duty to Cadant, *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589-91 (7th Cir. 2003), Copeland could not have engaged in a conspiracy with them to breach their non-existent "fiduciary duties."

*Second*, the conspiracy claim fails because plaintiff has presented no evidence that Copeland reached any agreement or otherwise knowingly participated in a Board member's fiduciary breaches. *Weinberger*, 519 A.2d at 131.

*Finally*, to the extent that plaintiff is arguing that Copeland conspired with Venrock, his claim also fails because an employee cannot conspire with his employer. *Ruggiero v. FuturaGene*, 948 A.2d 1124, 1135 n.26 (Del. Ch. 2008)*; Amaysing Tech. Corp. v. Cyberair Communications, Inc.*, 2005 WL 578972, *7 (Del. Ch. Mar. 3, 2005).

## CONCLUSION

For the reasons stated above, Eric Copeland's Motion for Judgment as a Matter of Law should be granted.

Dated: March 15, 2010

Respectfully submitted,

/s/ Thomas O. Kuhns
Thomas O. Kuhns (Bar No. 6180234)
Matthew T. Regan (Bar No. 6230106)
Gabor Balassa (Bar No. 6242469)
Melissa K. Grouzard (Bar No. 6286288)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2302
Facsimile: (312) 862-2200

*Counsel for Defendants Eric Copeland,
C.H. Randolph Lyon, Stephan Oppenheimer, and
Charles Walker*

# CERTIFICATE OF SERVICE

This is to certify that on March 15, 2010, the undersigned attorney caused the foregoing **DEFENDANT ERIC COPELAND'S MOTION FOR JUDGMENT AS A MATTER OF LAW** to be filed electronically with the United States District Court, Northern District of Illinois' CM/ECF system and electronically served upon the following counsel of record:

| | |
|---|---|
| James A. McGurk<br>Law Offices of James A. McGurk, P.C.<br>10 South LaSalle Street, Suite 3300<br>Chicago, IL 60603<br>Telephone: (312) 236-8900<br>Facsimile: (312) 277-3497<br><br>*Counsel for the Plaintiff* | Richard C. Leng<br>Law Offices of Richard C. Leng<br>330 West Main Street<br>Barrington, IL 60010<br>Telephone: (847) 381-6041<br>Facsimile: (312) 641-6174<br><br>*Additional Counsel for the Plaintiff* |
| Hugh G. McBreen<br>Brian Hogan<br>McBreen & Kopko<br>20 North Wacker Drive, Suite 2520<br>Chicago, IL 60606<br>Telephone: (312) 332-6405<br>Facsimile: (312)332-2657<br><br>*Additional Counsel for the Plaintiff* | David A. Rammelt<br>Dawn M. Beery<br>James M. Reiland<br>K&L Gates LLP<br>70 West Madison, Suite 3100<br>Chicago, IL 60602<br>Telephone: (312) 372-1121<br>Facsimile: (312) 827-8000<br><br>*Counsel for the Entity Defendants* |

/s/ Thomas O. Kuhns
Thomas O. Kuhns