IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CDX LIQUIDATING TRUST<br>BY THE CDX LIQUIDATING TRUSTEE, | )<br>)<br>) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 04 C 7236 |
| VENROCK ASSOCIATES, *et al.*, | )<br>) | Honorable Charles R. Norgle |
| Defendants. | )<br>) | |

_____

# DEFENDANT C.H. RANDOLPH LYON'S MOTION FOR JUDGMENT AS A MATTER OF LAW
_____

Thomas O. Kuhns (Bar No. 6180234)
Matthew T. Regan (Bar No. 6230106)
Gabor Balassa (Bar No. 6242469)
Melissa K. Grouzard (Bar No. 6286288)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:     (312) 862-2302
Facsimile:      (312) 862-2200

*Counsel for Defendants Eric Copeland,*
*C.H. Randolph Lyon,*
*Stephan Oppenheimer, and*
*Charles Walker*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| I. | Lyon Only Owed Fiduciary Duties to Cadant While He Served As A Director. | 3 |
| II. | Plaintiff Has Failed To Prove That Lyon Breached His Duty Of Loyalty. | 3 |
| | A. Lyon Was Not Materially Interested In Any Challenged Transactions. | 4 |
| | B. The Challenged Transactions Were Approved By A Majority of Disinterested Directors. | 6 |
| | C. Plaintiff Has Not Overcome The Business Judgment Rule's Presumption That Lyon Acted In Good Faith. | 6 |
| III. | Cadant's Articles Of Incorporation Protect Lyon From Liability For His Alleged Breaches Of The Duty Of Care. | 7 |
| IV. | Plaintiff Has Failed To Prove That Copeland Participated In A Conspiracy To Violate Fiduciary Duties. | 8 |
| CONCLUSION | | 9 |

# INTRODUCTION

Randy Lyon was not a venture capitalist. Lyon did not join Cadant's Board of Directors as the representative of a private equity or other investment firm. He invested his own money in Cadant. Plaintiff has apparently targeted Lyon in this lawsuit because, for Lyon's first four months as a Board member, he worked for J.P. Morgan. On December 31, 2000, Lyon resigned from J.P. Morgan. That same day, J.P. Morgan merged with Chase Manhattan Corporation ("Chase"), which had a subsidiary that had participated in Cadant's Series A round and was considering participating in a second round of financing. Through that same subsidiary, the post-merger J.P. Morgan Chase invested in the February 2001 and May 2001 bridge loans. Lyon, however, never worked for the post-merger J.P. Morgan Chase or any of its subsidiaries.

Indeed, it is undisputed that Lyon never worked for *any* entity that invested in or loaned money to Cadant. The fact that Lyon's former employer, J.P. Morgan, merged with another bank that invested in Cadant does not make Lyon an "interested" director with respect to any of the transactions in this lawsuit or otherwise override the strong protections that the business judgment rule affords Lyon.

# BACKGROUND

In January 2000, Venkata Majeti approached Lyon and persuaded him to invest $100,000 of his own money in Cadant's Series A offering. (Trial Tr. vol. 15, 3033:2-3034:2 (testimony of R. Lyon); *see also* DX 170, 98) Over the summer of 2000, Majeti invited Lyon to visit Cadant's facilities, and ultimately persuaded him to join Cadant's Board of Directors, which Lyon did on September 13, 2000. (DX 307, 2 (9/13/00 Cadant Board Meeting Minutes)) As compensation for joining Cadant's Board, Lyon received options for 80,000 shares of Cadant common stock. (DX 307, 12)

1

In September 2000, J.P. Morgan and Chase announced they would merge, effective December 31, 2000. (Trial Tr. vol. 14, 2883:17-24 (testimony of R. Lyon)) At the time, Lyon was the head of J.P. Morgan's Chicago office, which he had founded in 1992. (Trial Tr. vol. 14, 2882:12-14, vol. 15, 3032:2-7 (testimony of R. Lyon)) J.P. Morgan was not involved with Cadant and never invested in the company. (Trial Tr. vol. 15, 3047:4-14 (testimony of R. Lyon))

In mid-October 2000, Lyon learned that his counterpart at Chase had been chosen to run the Chicago office of the post-merger entity. (Trial Tr. vol. 15, 3048:3-9 (testimony of R. Lyon)) Lyon therefore planned to, and did resign from J.P. Morgan, effective December 31, 2000, before the merger was consummated. (Trial Tr. vol. 15, 3048:3 -14 (testimony of R. Lyon)) He never worked for Chase or for the post-merger entity, J.P. Morgan Chase. (Trial Tr. vol. 15, 3049:4-16 (testimony of R. Lyon)) Nor did Lyon ever work for any other entity that invested in Cadant. (Trial Tr. vol. 15, 3034:8-9 (Testimony of R. Lyon))

Lyon resigned from Cadant's board effective May 24, 2001, immediately after the Board approved the Second Bridge Loan. (DX 666, 2 (5/23/01 Cadant Board Meeting Minutes)) He was replaced by Fred Kopko. (DX 662, 2) Throughout Lyon's brief tenure as a Cadant Board member -- from September 2000 until May 2001 -- Lyon owned 28,011 shares of Series A preferred stock and options for 80,000 shares of common stock. (DX 170, 98; DX 307, 12) He therefore had a personal interest in seeing Cadant succeed as a fiduciary of the company, as a preferred shareholder, and as an owner of common share options.

# ARGUMENT

Plaintiff's duty of loyalty claim against Lyon fails for the simple reason that he was a disinterested director. Plaintiff has presented no evidence from which a reasonable jury could find that Lyon stood on both sides, and was therefore improperly "interested" in *any* of the transactions at issue. Moreover, even if Lyon were interested, which he was not, the challenged transactions were approved by a majority of disinterested directors. Nor has plaintiff presented any evidence that Lyon acted in bad faith. Plaintiff's duty of care claim likewise fails because Cadant's Articles of Incorporation protect Lyon from personal liability for any alleged breaches of that duty. Accordingly, judgment as a matter of law should be entered against plaintiff on its claims against Randy Lyon.

## I.     Lyon Only Owed Fiduciary Duties to Cadant While He Served As A Director.

Lyon served on Cadant's Board of Directors from September 13, 2000 to May 24, 2001. (DX 307, 2; DX 666, 2) He thus owed no fiduciary duties to Cadant when the company responded to ADC's letter in April 2000, or when Cadant sold its assets to Arris in early 2002. *See In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 758 (Del. Ch. 2005) (directors cannot breach their fiduciary duties before they join a board or after they resign), *aff'd*, 906 A.2d 27 (Del. 2006).

## II.    Plaintiff Has Failed To Prove That Lyon Breached His Duty Of Loyalty.

To overcome the Business Judgment Rule's presumption that Lyon satisfied his duty of loyalty, plaintiff must prove, for each challenged action, that Lyon was "interested" or acted in bad faith. *See Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006); *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993); *Hudson v. Prime Retail, Inc.*, 2004 WL 1982383, at *11 (Md. Cir. Ct. Apr. 1, 2004). A director is "interested" with regard to a particular transaction if he is on both sides of the transaction, or expects to derive a *material* benefit from the transaction *not*

3

*shared by the stockholders generally.* Hudson, 2004 WL 1982383, at *12; *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002). "Materiality means that the alleged benefit was significant enough in the context of the director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties to the shareholders without being influenced by her overriding personal interest." *Orman*, 794 A.2d at 23 (internal quotation omitted, emphasis added); *accord Hudson*, 2004 WL 1982383, at *12.

### A. Lyon Was Not Materially Interested In Any Challenged Transactions.

It is undisputed that Lyon owned both Cadant common stock options and Cadant preferred stock. (DX 170, 98; DX 307, 12) Lyon thus had a personal interest in having Cadant secure financing on terms that would benefit all classes of shareholders.[1] Plaintiff has suggested that the bonus Lyon received for his J.P. Morgan work in 2000 and his four-month ownership of J.P. Morgan Chase stock might have caused him to abandon his fiduciary duties and his personal interest in maximizing the value of Cadant. These arguments are based on illogical speculation, not evidence.

<u>Lyon's Annual Bonus</u>. Plaintiff has failed to present a shred of evidence that Lyon expected any of his decisions as a Cadant Director would affect his year-end bonus for work at J.P. Morgan in 2000. Instead, the undisputed record shows that Lyon's bonus was based on his involvement in closing major transactions -- involving Quaker Oats, Mallinckrodt, and Gallelio -- that brought J.P. Morgan significant revenue in 2000. (Trial Tr. vol. 14, 2885:20-2886:16, vol. 15, 3050:22-3051:18 (testimony of R. Lyon)) Moreover, Lyon received his J.P. Morgan bonus

---

[1] Lyon's independence was recognized by Majeti and the other Board member in official corporate documents (*See* DX 406, 8 (11/8/00 Board Meeting minutes); JTX 217, 7 (Signed Chase Term Sheet))

4

(the amount of which plaintiff never established) in January 2001, after Chase had already decided *not* to proceed with the Series B financing.

Lyon's J.P. Morgan Chase Stock. Plaintiff has also failed to present a legally sufficient basis to support its argument that Lyon was improperly interested in the challenged transactions because his pre-merger J.P. Morgan stock automatically converted to J.P. Morgan Chase stock when the two banks merged on December 31, 2000. (Trial Tr. vol. 15, 3050:7-12 (testimony of R. Lyon)) Plaintiff could not possibly show (and thus did not even try) that J.P. Morgan Chase's investment in Cadant had a material effect on the bank's stock price. After all, when the post-merger J.P. Morgan Chase loaned $3.36 million to Cadant in the First Bridge Loan (JTX 254, 34), it was one of the largest banks in the U.S. Nor did plaintiff present any evidence of the value of Lyon's J.P. Morgan Chase stock holdings relative to Lyon's overall "economic circumstances." Consequently, there is no evidence that J.P. Morgan Chase's participation in the First Bridge Loan had *any* effect on the value of Lyon's holdings of the bank's stock, much less such a large effect that it was "improbable that [Lyon] could perform [his] fiduciary duties to the shareholders without being influenced by [his] overriding personal interest." *Orman*, 794 A.2d at 23.

Finally, it is undisputed that Lyon sold his J.P. Morgan Chase stock promptly, disposing of it all by early April 2001. (Trial Tr. vol. 15, 3050:7-21 (testimony of R. Lyon)) Thus, by May 2001, when Lyon voted to approve the Second Bridge Loan, he had no conceivable connection to any of the Bridge Lenders.[2]

---

[2] Plaintiff's further suggestion that Lyon's ownership of preferred shares in addition options for common stock somehow made Lyon improperly "interested" in the challenged transactions also lacks merit. First, plaintiff has presented no evidence that the challenged transactions were expected to benefit one class of shareholders at the expense of another. Second, Lyon's personal interests were aligned with *both* classes of Cadant stock, given his personal ownership of common options and preferred stock.

5

### B. The Challenged Transactions Were Approved By A Majority of Disinterested Directors.

The actions of an interested director are still protected by the Business Judgment Rule if "[1] the interested director fully discloses his interest and [2] a majority of the disinterested directors ratify the interested transaction." *Cooke v. Oolie*, 2000 WL 710199, at *13 (Del. Ch. May 24, 2000); *accord Benihana of Tokyo, Inc., Inc. v. Benihana, Inc.*, 906 A.2d 114, 120 (Del. 2006). It is undisputed that Cadant's Board members knew that Lyon was employed by J.P. Morgan until he resigned on December 31, 2000 and were aware of J.P. Morgan's planned merger with Chase as of September 13, 2000. (*See* DX 307; Trial Tr. vol. 5, 745:7-14 (testimony of F. Kopko)) Thus, even if plaintiff had satisfied its burden of presenting sufficient evidence for a jury to find Lyon was "interested" in any of the challenged transactions -- which it did not -- Lyon still would not be liable for a breach of the duty of loyalty because the transactions were approved by a majority of disinterested directors: Majeti and Rochkind in approving the Chase term sheet, and Majeti, Vohra, and Rochkind in approving the bridge loans. (*See* Eric Copeland's Mot. for J. as a Matter of Law, Part I.A)

### C. Plaintiff Has Not Overcome The Business Judgment Rule's Presumption That Lyon Acted In Good Faith.

"[T]he Business Judgment Rule creates a presumption that a director acted in good faith." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 755 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006). "In order to overcome that presumption, a plaintiff must prove an act of bad faith by a preponderance of the evidence." *Id.* "A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act,

demonstrating a conscious disregard for his duties." *Id.* Plaintiff has offered no evidence from which a reasonable jury could conclude that Lyon acted with bad faith.

## III. Cadant's Articles Of Incorporation Protect Lyon From Liability For His Alleged Breaches Of The Duty Of Care.

Both Delaware and Maryland law allow corporations to exculpate their directors from personal liability for breaches of the duty of care. Section 102(b)(7) of the Delaware General Corporation Law provides that a corporate charter may limit director liability for duty of care violations. *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 239 (Del. 2009); *In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 810 (7th Cir. 2003); *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 777, 798-99 (Del. Ch. 2004). Section 5-418 of the Maryland Code is even broader, authorizing corporations to "restrict director monetary liability to situations involving active and deliberate dishonesty or the actual receipt of an improper benefit." *Grill v. Hoblitzell*, 771 F. Supp. 709, 712 (D. Md. 1991); *accord Hayes v. Crown Cent. Petroleum Corp.*, 78 Fed. App'x 857, 865 (4th Cir. 2003). Given the prevalence of these provisions, "in most instances money damages are unavailable to a plaintiff who could theoretically prove a duty of care violation." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 750 (Del. Ch. 2005) (Chandler, J.), *aff'd*, 906 A.2d 27 (Del. 2006).

It is undisputed that Cadant's Articles of Incorporation contained provisions exculpating Cadant's Directors from personal liability to the fullest extent permitted by state law. (*See* DX 58, 8 (Maryland Articles of Incorporation); DX 504, 36 (Delaware Articles of Incorporation)) At a minimum, these provisions protect Lyon from personal liability for alleged breaches of the duty of care.[3]

---

[3] The Maryland provision further protects Lyon from liability for alleged breaches of his duty of loyalty for any conduct in 2000 (while Cadant was incorporated in Maryland), because plaintiff has failed to

7

## IV. Plaintiff Has Failed To Prove That Copeland Participated In A Conspiracy To Violate Fiduciary Duties.

Although it has asserted a conspiracy claim against Copeland, plaintiff has made no attempt to define the purported participants in that conspiracy, when the conspiracy supposedly occurred, or what agreement was allegedly reached between Copeland and others. To prove that Copeland conspired to breach a fiduciary duty, plaintiff must prove, at a minimum: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3) a knowing participation in that breach by the [co-conspirators]." *Weinberger v. Rio Grand Industries, Inc.*, 519 A.2d 116, 131 (Del. Ch. 1986); *accord Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 428 (Md. 2009); *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.* 665 A.2d 1038, 1045 (Md. 1995). Plaintiff's conspiracy claim fails as a matter of law.

*First*, plaintiff has failed to prove "a breach of the fiduciary's duty." *Weinberger*, 519 A.2d at 131. Specifically, plaintiff has presented no evidence from which a reasonable jury could conclude that Copeland or any other individual defendant breached his fiduciary duties to Cadant. (*See* Motions for Judgment as a Matter of Law for C.H. Randolph Lyon, Stephan Oppenheimer, and Eric Copeland). In addition, because the entity defendants owed no fiduciary duty to Cadant, *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589-91 (7th Cir. 2003), Copeland could not have engaged in a conspiracy with them to breach their non-existent "fiduciary duties."

*Second*, the conspiracy claim fails because plaintiff has presented no evidence that Copeland reached any agreement or otherwise knowingly participated in a Board member's fiduciary breaches. *Weinberger*, 519 A.2d at 131.

*Finally*, to the extent that plaintiff is asserting that Lyon conspired with regard to any

---

present evidence that Lyon engaged in "active and deliberate dishonesty" or actually received "an improper benefit" in 2000. Md. Code, Courts Judicial Proceedings § 5-418.

decisions made when he was not on the Board, the claim fails because Lyon only owed fiduciary duties to Cadant while he served as a director. *See Shenker*, 983 A.2d at 428 ("A defendant may not be adjudged liable for civil conspiracy unless that defendant was legally capable of committing the underlying tort alleged.").

## **CONCLUSION**

For the reasons stated above, Randy Lyon's Motion for Judgment as a Matter of Law should be granted.

Dated: March 15, 2010

Respectfully submitted,

/s/ Thomas O. Kuhns
Thomas O. Kuhns (Bar No. 6180234)
Matthew T. Regan (Bar No. 6230106)
Gabor Balassa (Bar No. 6242469)
Melissa K. Grouzard (Bar No. 6286288)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2302
Facsimile: (312) 862-2200

*Counsel for Defendants Eric Copeland, C.H. Randolph Lyon, Stephan Oppenheimer, and Charles Walker*

# CERTIFICATE OF SERVICE

This is to certify that on March 15, 2010, the undersigned attorney caused the foregoing **DEFENDANT C.H. RANDOLPH LYON'S MOTION FOR JUDGMENT AS A MATTER OF LAW** to be filed electronically with the United States District Court, Northern District of Illinois' CM/ECF system and electronically served upon the following counsel of record:

| | |
|---|---|
| James A. McGurk<br>Law Offices of James A. McGurk, P.C.<br>10 South LaSalle Street, Suite 3300<br>Chicago, IL 60603<br>Telephone: (312) 236-8900<br>Facsimile: (312) 277-3497<br><br>*Counsel for the Plaintiff* | Richard C. Leng<br>Law Offices of Richard C. Leng<br>330 West Main Street<br>Barrington, IL 60010<br>Telephone: (847) 381-6041<br>Facsimile: (312) 641-6174<br><br>*Additional Counsel for the Plaintiff* |
| Hugh G. McBreen<br>Brian Hogan<br>McBreen & Kopko<br>20 North Wacker Drive, Suite 2520<br>Chicago, IL 60606<br>Telephone: (312) 332-6405<br>Facsimile: (312)332-2657<br><br>*Additional Counsel for the Plaintiff* | David A. Rammelt<br>Dawn M. Beery<br>James M. Reiland<br>K&L Gates LLP<br>70 West Madison, Suite 3100<br>Chicago, IL 60602<br>Telephone: (312) 372-1121<br>Facsimile: (312) 827-8000<br><br>*Counsel for the Entity Defendants* |

/s/ Thomas O. Kuhns
Thomas O. Kuhns