IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CDX LIQUIDATING TRUST <br> BY THE CDX LIQUIDATING TRUSTEE, <br><br> **Plaintiff,** <br><br> v. <br><br> **VENROCK ASSOCIATES**, *et al.*, <br><br> **Defendants.** | Case No.: 04 C 7236 <br><br> Honorable Charles R. Norgle |

---

### DEFENDANT STEPHAN OPPENHEIMER'S MOTION
### FOR JUDGMENT AS A MATTER OF LAW

---

Thomas O. Kuhns (Bar No. 6180234)
Matthew T. Regan (Bar No. 6230106)
Gabor Balassa (Bar No. 6242469)
Melissa K. Grouzard (Bar No. 6286288)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:     (312) 862-2302
Facsimile:      (312) 862-2200

*Counsel for Defendants Eric Copeland,
C.H. Randolph Lyon,
Stephan Oppenheimer, and
Charles Walker*

# **TABLE OF CONTENTS**

| | Page |
|---|---|
| INTRODUCTION | 1 |
| STANDARD OF REVIEW | 1 |
| ARGUMENT | 2 |
| I. Plaintiff Has Failed To Prove Oppenheimer Violated His Duty Of Loyalty | 3 |
|     A. The Board's Decision On The Second Bridge Loan Was Approved By A Majority Of Disinterested Directors. | 3 |
|     B. Oppenheimer Had No "Actual Conflict" In Voting For The Arris Sale Because Cadant Had No Other Viable Alternatives. | 5 |
|     C. Plaintiff Has Not Overcome The Business Judgment Rule's Presumption That Oppenheimer Acted In Good Faith. | 6 |
| II. Cadant's Articles Of Incorporation Bar Plaintiff's Claims For Breach Of The Duty Of Care. | 7 |
| III. Plaintiff Has Failed To Prove That Oppenheimer Participated In A Conspiracy To Violate Fiduciary Duties. | 7 |
| CONCLUSION | 9 |

## INTRODUCTION

It is undisputed that Stephan Oppenheimer was not on the Board during transactions relating to (i) the April 2001 letter from ADC, (ii) proposed term sheets from Chicago Investor Group ("CIG") and Chase Capital Partners ("Chase"), or (iii) the First Bridge Loan in early 2001. Accordingly, Oppenheimer cannot be liable for any alleged breach of fiduciary duties for decision making concerning those transactions. *In re Walt Disney Co. Derivative Litig.*, 2004 WL 2050138, at *4 (Del. Ch. Sept. 10, 2004) (directors cannot breach their fiduciary duties before they join a board).

Plaintiff's fiduciary-breach claims against Oppenheimer are therefore limited to two of the Cadant Board's business decisions: (i) approving the term sheet for the Second Bridge Loan in May 2001, and (ii) approving the sale of Cadant's assets to Arris Group, Inc. ("Arris") in December 2001. Having concluded its case in chief, plaintiff has failed to present sufficient evidence from which a reasonable jury could find for the plaintiff on its claims against Oppenheimer. Plaintiff's claims fail essentially for three straightforward reasons:

- Oppenheimer abstained from voting on the Second Bridge Loan because, as all of Cadant's Board members were aware, he worked for J.P. Morgan Partners (formerly, Chase Capital Partners). After Oppenheimer abstained, the Board's disinterested directors voted to approve the Second Bridge Loan.

- In late 2001 and early 2002, Cadant had no viable alternative to the asset sale to Arris. Thus, under Delaware law, Cadant's Board members, including Oppenheimer, had no improper "interest" in that asset sale.

- The *exculpatory provision* in Cadant's Articles of Incorporation bars plaintiff's breach of duty of care claims.

Thus, judgment as a matter of law should be entered in Oppenheimer's favor.

## STANDARD OF REVIEW

"[A] court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for

1

that party on that issue.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (quoting Fed. R. Civ. P. 50(a)). Although "the court must draw all reasonable inferences in favor of the nonmoving party," *Reeves*, 530 U.S. at 150, the court must also give credence to "evidence supporting the moving party that is uncontradicted and unimpeached." *Id.* at 151 (quotation omitted); *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007). On a Rule 50 motion, the Court may consider testimony from witnesses associated with the moving party. *See, e.g., Hossack*, 492 F.3d at 860-63 (relying on testimony of defendant's CEO in affirming order granting defendant's Rule 50 motion); *see also Traylor v. Brown*, 295 F.3d 783, 790-91 (7th Cir. 2002) (*Reeves* does not require court to ignore uncontroverted testimony of witnesses associated with the moving party). To defeat a Rule 50 motion, the plaintiff must present "more than a mere scintilla of evidence to support [its] case." *Zimmerman v. Chicago Bd. of Trade*, 360 F.3d 612, 623 (7th Cir. 2004). Judgment as a matter of law is proper if no reasonable jury could find for the plaintiff on all essential elements of its claim. *Harper v. Albert*, 400 F.3d 1052, 1061 (7th Cir. 2005).

## ARGUMENT

The Business Judgment Rule, well-established under Delaware law, protects corporate directors from after-the-fact challenges to their judgments. *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). "The rule posits a powerful presumption in favor of actions taken by the directors in that a decision made by a loyal and informed board will not be overturned by the courts unless it cannot be attributed to any rational business purpose." *Id.* Thus, in order to prevail, plaintiff must prove that the individual defendants, in reaching the challenged decisions, breached either their duty of care or their duty of loyalty. *Cede*, 634 A.2d at 361; *see also Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006) (good faith is encompassed within the duty of loyalty). Plaintiff has not and cannot overcome the high hurdles that the

Business Judgment Rule imposes.

**I.    Plaintiff Has Failed To Prove Oppenheimer Violated His Duty Of Loyalty.**

To overcome the Business Judgment Rule's presumption that Oppenheimer satisfied his duty of loyalty, plaintiff must prove, for each challenged action, that Oppenheimer was "interested" or acted in bad faith. *See Stone*, 911 A.2d at 369-70; *Cede*, 634 at 361. A director is "interested" with regard to a particular transaction if he is on both sides of the transaction, or expects to derive a material benefit from the transaction not shared by the stockholders generally. *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002). The actions of an interested director, however, are still protected by the Business Judgment Rule if "[1] the interested director fully discloses his interest and [2] a majority of the disinterested directors ratify the interested transaction." *Cooke v. Oolie*, 2000 WL 710199, at *13 (Del. Ch. May 24, 2000); *accord Benihana of Tokyo, Inc., Inc. v. Benihana, Inc.*, 906 A.2d 114, 120 (Del. 2006).

**A.    The Board's Decision On The Second Bridge Loan Was Approved By A Majority Of Disinterested Directors.**

As everyone involved in assessing the Second Bridge Loan was aware, J.P. Morgan Partners was one of the principal lenders on that potential loan. Indeed, in May 2001, the Board requested that Oppenheimer speak with J.P. Morgan Partners about participating in the Second Bridge Loan. (DX 610, 1) Because he was a J.P. Morgan Partners employee, Oppenheimer abstained from voting on the Second Bridge Loan.[1] (DX 662, 2 (5/22/01 Cadant Board Meeting Minutes); Trial Tr. vol. 16, 3293:25-3294:5 (testimony of J. Vohra), vol. 15, 3080:1-3081:11 (testimony of R. Lyon))

---

[1] Oppenheimer's abstention from this vote provides an independent ground for entering judgment as a matter of law. After all, an interested director cannot breach his duty of loyalty if he does not participate in the challenged Board vote. *In re Radnor Holdings Corp.*, 353 B.R. 820, 844-45 (Bankr. D. Del. 2006).

3

Like Oppenheimer, Eric Copeland (of Venrock) and Charles Walker (of J.P. Morgan Chase) also abstained from the vote on the Second Bridge Loan. The Second Bridge Loan was then unanimously approved by the disinterested Directors. The record evidence shows that Directors Venkata Majeti, Jay Vohra, and Randy Lyon were disinterested with respect to the Second Bridge Loan (and other transactions in which Oppenheimer was not involved). Plaintiff has offered no evidence to suggest that Vohra was in any way "interested" in any of the challenged transactions.[2] Plaintiff has suggested that Majeti somehow lacked independence from Copeland, but has failed to present evidence from which a reasonable juror could conclude that Majeti, Cadant's founder, largest shareholder, President, CEO, and Board Chairman, was "beholden" to Copeland or was so under his influence that Majeti's "discretion would be sterilized," as required to prove a lack of independence. *See Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). Finally, as addressed in Randy Lyon's Motion for Judgment as a Matter of Law, filed simultaneously with this motion, plaintiff has failed to present evidence establishing that Lyon was improperly "interested" in any of the challenged transactions. (*See* C.H. Randolph Lyon's Mot. for J. as a Matter of Law, Part II.A)

Because Lyon, Vohra, and Majeti were disinterested when they unanimously approved the Second Bridge Loan, whatever action plaintiff contends that Oppenheimer purportedly took with respect to the Second Bridge Loan would be protected by the Business Judgment Rule, because Oppenheimer's interest in the bridge loans was "fully disclosed" and "a majority of the disinterested directors ratif[ied] the interested transaction." *Cooke*, 2000 WL 710199, at *13; *accord Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993).

---

[2] To the contrary, Vohra, one of plaintiff's witnesses, testified that, for each vote, he informed himself of "all the material issues and information" and "exercised [his] own personal business judgment as a director." (Trial Tr. vol. 16, 3376:9-13, 3376:25-3377:3)

4

### B. Oppenheimer Had No "Actual Conflict" In Voting For The Arris Sale Because Cadant Had No Other Viable Alternatives.

To overcome the Business Judgment Rule's presumption that Oppenheimer acted in Cadant's best interests in voting to approve the sale of Cadant's assets to Arris, plaintiff must present evidence that an "*actual conflict*" existed. *Cooke*, 2000 WL 710199, at *12; *accord Blackmore Partners, L.P. v. Link Energy LLC*, 2005 WL 2709639, at *6 (Del. Ch. Oct. 14, 2005). In *Cooke*, plaintiffs argued that because two defendant board members involved in seeking acquisition proposals were also creditors of the company, those board members were "interested." 2000 WL 710199, at *12. The court agreed with plaintiffs that the directors' position as lenders created the "potential for a conflict," but explained that the mere *potential* for a conflict of interest was insufficient. *Id.* Rather, to prevail on their claims, plaintiffs in *Cooke* had to establish an "*actual conflict*" by showing the directors chose an offer that benefited the creditors at the expense of the shareholders when *"compared to the other proposals available"* to the company. *Id.* (emphasis added). Because plaintiffs had failed to show another offer that was harsher to the creditors than the one the Board had accepted, the Court held "as a matter of law, that the plaintiffs have failed to demonstrate actual interest and, therefore, have failed to rebut the business judgment rule." *Id.* at *13.

The same is true here. As in *Cooke*, plaintiff here has failed to establish an "actual conflict." Given that (i) after engaging Goldman Sachs for ten months and Thomas Weisel Partners for six months, the Arris transaction was the *only* acquisition proposal the company received (*see* JTX 366, 24-25; JTX 402, 22-25; Trial Tr. vol. 6, 1126:22-1127:15 (testimony of F. Kopko), vol. 9, 1756:22-1758:5 (testimony of V. Majeti)), and (ii) Cadant was on the verge of exhausting the last of its remaining cash, the Board members understood that Cadant had no

choice but to sell its assets to Arris or to shut down the business completely.³ (Trial Tr. vol. 12, 2407:12-24 (testimony of E. Copeland), vol. 13, 2639:4-22 (testimony of S. Oppenheimer)) Because there were no "other proposals" in January 2002, plaintiff's duty of loyalty claim concerning the Arris sale fails as a matter of law.⁴ *Cooke*, 2000 WL 710199, at *12.

### C. Plaintiff Has Not Overcome The Business Judgment Rule's Presumption That Oppenheimer Acted In Good Faith.

"[T]he Business Judgment Rule creates a presumption that a director acted in good faith." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 755 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006). "In order to overcome that presumption, a plaintiff must prove an act of bad faith by a preponderance of the evidence." *Id.* "A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate the applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act,

---

³ TWP also provided a fairness opinion that the price Cadant would receive from Arris was fair, and the directors relied on that opinion, as well as on Goldman and TWP's reports concerning their fruitless efforts to identify alternative acquirers or financing. (*See* JTX 352, 7-9; JTX 366, 24-25; JTX 402; DX 954; Trial Tr. vol. 12, 2408:4-19 (testimony of E. Copeland); vol. 13, 2692:3-10 (testimony of S. Oppenheimer); 3/10/10 p.m. Trial Tr. 91:6-18 (testimony of C. Walker)) "By statute a director is fully protected in relying in good faith on reports to the corporation made by an appraiser selected with reasonable care." *Kaplan v. Goldsamt*, 380 A.2d 556, 568 (Del. Ch. 1977) (citing 8 Del.C. § 141(e)). "In the area of valuation, wide discretion is allowed to directors, and as long as they appear to act in good faith, with honest motives, and for honest ends, the exercise of their discretion will not be interfered with by the courts." *Id*.

⁴ Plaintiff's witness Michael Barclay testified that GunnAllen was "looking to put up an additional $10 million" in Cadant in December of 2001. (3/8/10 p.m. Trial Tr. 72:16-22) On cross-examination, however, Barclay conceded that GunnAllen never submitted a written offer to Cadant. (3/8/10 p.m. Trial Tr. 86:9-10; 3/9/10 a.m. Trial Tr. 2:10-12)) Further, GunnAllen had not actually secured the $10 million to invest, and, indeed, had not spoken to any potential investor about investing in Cadant. (3/9/10 a.m. Trial Tr. 6:10-7:3) Barclay also admitted that, depending on Cadant's financial performance, GunnAllen may not have been willing to make any investment in Cadant. (3/9/10 a.m. Trial Tr. 4:17-5:18) Thus, Cadant's Board had no ability to compare GunnAllen's hypothetical investment with the *actual* offer from Arris. Nor is there evidence from which the jury could evaluate that speculative investment.

demonstrating a conscious disregard for his duties." *Id.* Plaintiff has offered no such evidence of bad faith by Oppenheimer in this case.

## II. Cadant's Articles Of Incorporation Bar Plaintiff's Claims For Breach Of The Duty Of Care.

Delaware law allows corporations to exculpate their directors from personal liability for breaches of the duty of care. Section 102(b)(7) of the Delaware General Corporation Law provides that a corporate charter may limit director liability for duty of care violations. *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 239 (Del. 2009); *In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 810 (7th Cir. 2003); *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 777, 798-99 (Del. Ch. 2004). Given the prevalence of these provisions, "in most instances money damages are unavailable to a plaintiff who could theoretically prove a duty of care violation." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d at 750.

It is undisputed that Cadant's Delaware Articles of Incorporation -- the only articles that apply to Oppenheimer because Cadant reincorporated in Delaware, effective January 1, 2001 -- contained a provision exculpating Cadant's Directors from personal liability to the fullest extent permitted by state law. (DX 504, 36 (Delaware Articles of Incorporation)) At a minimum, these provisions protect Oppenheimer from liability for alleged breaches of the duty of care. *See Lyondell*, 970 A.2d at 239; *Abbott Labs*, 325 F.3d at 810.

## III. Plaintiff Has Failed To Prove That Oppenheimer Participated In A Conspiracy To Violate Fiduciary Duties.

Although it has asserted a conspiracy claim against Oppenheimer, plaintiff has made no attempt to define the purported participants in that conspiracy, when the conspiracy supposedly occurred, or what agreement was allegedly reached between Oppenheimer and others. To prove that Oppenheimer conspired to breach a fiduciary duty, plaintiff must prove, at a minimum: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3) a knowing

7

participation in that breach by the [co-conspirators]." *Weinberger v. Rio Grand Industries, Inc.*, 519 A.2d 116, 131 (Del. Ch. 1986); *accord Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 428 (Md. 2009); *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.* 665 A.2d 1038, 1045 (Md. 1995). Plaintiff's conspiracy claim fails as a matter of law.

*First*, plaintiff has failed to prove "a breach of the fiduciary's duty." *Weinberger*, 519 A.2d at 131. Specifically, plaintiff has presented no evidence from which a reasonable jury could conclude that Oppenheimer or any other individual defendant breached his fiduciary duties to Cadant. (*See* Motions for Judgment as a Matter of Law for C.H. Randolph Lyon, Charles Walker, and Eric Copeland) In addition, because the entity defendants owed no fiduciary duty to Cadant, *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589-91 (7th Cir. 2003), Oppenheimer could not have engaged in a conspiracy with them to breach their non-existent "fiduciary duties."

*Second*, the conspiracy claim fails because plaintiff has presented no evidence that Oppenheimer reached any agreement or otherwise knowingly participated in a Board member's fiduciary breaches. *Weinberger*, 519 A.2d at 131.

*Third*, to the extent that plaintiff is asserting that Oppenheimer conspired with regard to the Chase term sheet for the Series B financing or anything else in 2000, the claim fails because Oppenheimer was not on Cadant's Board in 2000 and thus owed Cadant no fiduciary duties. *See Shenker*, 983 A.2d at 428 ("A defendant may not be adjudged liable for civil conspiracy unless that defendant was legally capable of committing the underlying tort alleged.")

*Finally*, to the extent that plaintiff is arguing that Oppenheimer conspired with J.P. Morgan Chase, his claim also fails because an employee cannot conspire with his employer. *Ruggiero v. FuturaGene*, 948 A.2d 1124, 1135 n.26 (Del. Ch. 2008)*; Amaysing Tech. Corp. v. Cyberair Communications, Inc.*, 2005 WL 578972, *7 (Del. Ch. Mar. 3, 2005).

## **CONCLUSION**

For the reasons stated above, Stephan Oppenheimer's Motion for Judgment as a Matter of Law should be granted.

Dated: March 15, 2010

Respectfully submitted,

/s/ Thomas O. Kuhns
Thomas O. Kuhns (Bar No. 6180234)
Matthew T. Regan (Bar No. 6230106)
Gabor Balassa (Bar No. 6242469)
Melissa K. Grouzard (Bar No. 6286288)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2302
Facsimile: (312) 862-2200

*Counsel for Defendants Eric Copeland,
C.H. Randolph Lyon, Stephan Oppenheimer, and
Charles Walker*

# CERTIFICATE OF SERVICE

This is to certify that on March 15, 2010, the undersigned attorney caused the foregoing **DEFENDANT STEPHAN OPPENHEIMER'S MOTION FOR JUDGMENT AS A MATTER OF LAW** to be filed electronically with the United States District Court, Northern District of Illinois' CM/ECF system and electronically served upon the following counsel of record:

| | |
|---|---|
| James A. McGurk<br>Law Offices of James A. McGurk, P.C.<br>10 South LaSalle Street, Suite 3300<br>Chicago, IL 60603<br>Telephone:   (312) 236-8900<br>Facsimile:    (312) 277-3497<br><br>*Counsel for the Plaintiff* | Richard C. Leng<br>Law Offices of Richard C. Leng<br>330 West Main Street<br>Barrington, IL 60010<br>Telephone:   (847) 381-6041<br>Facsimile:    (312) 641-6174<br><br>*Additional Counsel for the Plaintiff* |
| Hugh G. McBreen<br>Brian Hogan<br>McBreen & Kopko<br>20 North Wacker Drive, Suite 2520<br>Chicago, IL 60606<br>Telephone:   (312) 332-6405<br>Facsimile:    (312)332-2657<br><br>*Additional Counsel for the Plaintiff* | David A. Rammelt<br>Dawn M. Beery<br>James M. Reiland<br>K&L Gates LLP<br>70 West Madison, Suite 3100<br>Chicago, IL 60602<br>Telephone:   (312) 372-1121<br>Facsimile:    (312) 827-8000<br><br>*Counsel for the Entity Defendants* |

/s/ Thomas O. Kuhns_____
Thomas O. Kuhns