UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| **CDX LIQUIDATING TRUST** by the **CDX LIQUIDATING TRUSTEE,** | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 04 C 7236 ) |
| **VENROCK ASSOCIATES, et al.,** | ) Hon. Charles R. Norgle ) ) |
| Defendants. | ) ) |

**MOTION OF ENTITY DEFENDANTS J.P. MORGAN PARTNERS (BHCA) LLP, CHASE EQUITY ASSOCIATES, LLC, AND HAMBRECHT & QUIST CALIFORNIA, *ET AL.*[1] FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(A)**

***OVERVIEW OF RELIEF SOUGHT***

After six weeks of testimony, Plaintiff Liquidating Trustee ("Trustee") has failed to present any credible evidence to prevail on his claims against these hand-picked, deep-pocket entity Defendants for "conspiracy" or for "aiding & abetting." As set forth below in more detail, to sustain either of these counts requires, at a minimum, proof that *specific* defendants entered into *unlawful agreements* (conspiracy), or had *knowledge of unlawful conduct* (aiding & abetting), and engaged in *specific conduct* in furtherance of the agreement or provided *substantial assistance* in furtherance of the unlawful conduct. In other words, there must be

---

[1] This motion is brought by Defendants Hambrecht & Quist California, H&Q Employee Venture Fund 2000, L.P.; Access Technology Partners, L.P.; Access Technology Partners Brokers Fund, L.P.; H&Q Cadant Investors, L.P.; Chase Equity Associates, LLC; and J.P. Morgan Partners (BHCA), L.P. (hereafter collectively the "Chase entity Defendants"). The Venrock entity Defendants bring a separate motion.

credible evidence of some unlawful conduct, illicit plan, or scheme by a specific alleged conspirator, as well as credible evidence of overt acts in furtherance thereof. Merely incanting the words "conspiracy" or "aiding & abetting" is not enough.

The Trustee has presented none of this evidence. Zero. No evidence of any kind has been presented at trial that any specific defendant – (1) Hambrecht & Quist California, or (2) H&Q Employee Venture Fund 2000, LP, or (3) Access Technology Partners, LP, or (4) Access Technology Partners Brokers Fund, LP, or (5) H&Q Cadant Investors, LP, or (6) Chase Equity Associates, LLC, or (7) J.P. Morgan Partners (BHCA), LP – did <u>anything</u> other than invest money in Cadant. The Trustee has not presented evidence of any meetings or communications between any of these defendants and any other party where any conspiratorial, collusive or nefarious plan was hatched. Likewise, the Trustee has presented no evidence of specific conduct by any of these defendants to further or "aid & abet" any improper purpose.

Even if such evidence could be conjured (it cannot), the Trustee's claims relating to any alleged conduct occurring in 2000 must be dismissed as a matter of Maryland law for two reasons. First, there is no cause of action for a "conspiracy to breach fiduciary duty" unless the defendant itself owes such a duty. Although directors Charles Walker and Stephan Oppenheimer owed fiduciary duties at times in 2001, it is clear that *none* of the Chase entities owed any duty to Cadant. Second, the undisputed evidence establishes that neither of these two directors served on Cadant's board until 2001 – long after most of the conduct about which the Trustee complains is alleged to have occurred. Obviously, there can be no "conspiracy" or "aiding & abetting" a breach of fiduciary duty when no underlying fiduciary duty even exists, and thus there is no possible liability for events occurring in 2000.

The Liquidating Trustee has had every chance in this case. Even with all of the painstaking, duplicative and cumulative evidence introduced over the first six weeks of this trial, it is clear that no reasonable jury could conclude from the evidence – no matter how favorably construed in the Trustee's favor – that any of the Chase entity Defendants aided and abetted or conspired with anyone to breach fiduciary duties owed to Cadant. As a result, this Court should enter judgment as a matter of law in favor of Chase and against the Trustee on Counts Six (Aiding and Abetting Breach of Fiduciary Duties) and Sixteen (Civil Conspiracy).

## *ARGUMENT*

### I. THE STANDARD UNDER FRCP 50.

When "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the Court may "grant a motion for judgment as a matter of law against the party on a claim or defense . . . that can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(A)(1)(b); *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 890 (7th Cir. 2001) (affirming grant of Rule 50(a) motion in defendants' favor); *see also Mizwicki v. Helwig*, 196 F.3d 828, 831 (7th Cir. 1999). A "mere scintilla of evidence" in favor of the plaintiff's claims is insufficient to prevent judgment under Rule 50. *Zimmerman v. Chicago Bd. of Trade*, 360 F.3d 612, 623 (7th Cir. 2004).

### II. THERE IS NO EVIDENCE OF ANY "CONSPIRACY" INVOLVING THE CHASE ENTITY DEFENDANTS.

#### (A) <u>Elements of the Claims; Plaintiff's Burden of Proof.</u>

To establish a conspiracy to breach fiduciary duties under Maryland law (which governs all pre-January 1, 2001 conduct), a plaintiff must prove (1) an agreement between at least two

persons to accomplish a wrongful act, or to use unlawful means to accomplish an otherwise lawful act; (2) an overt act in furtherance of that agreement; and (3) resulting damages. *Shenker v. Laureate Educ. Inc.*, 983 A.2d 408, 428 (Md. 2009). Under Delaware law, the plaintiff must prove (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) damages resulting from the action of the conspiracy parties. *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 892 (Del. Ch. 2009).[2]

"Conspiracy" requires proof of scienter on the part of the defendants. *See Christian v. Minn. Mining & Mfg. Co.*, 126 F. Supp. 2d 951, 959 (D. Md. 2001) (finding no conspiracy based on a lack of evidence that defendant company's purpose was improper); *Cliff House Condo. Council v. Capaldi*, Civ. A. No. 10568, 1991 WL 165302, *6 (Del. Ch. Aug. 26, 1991) (dismissing conspiracy claim where plaintiff did not allege facts establishing knowing participation in breach of fiduciary duty). The Trustee, therefore, must show that each of the Chase entities – through an appointed director – was "in cahoots" with other breaching board members at the time the wrong occurred. *Paine Webber v. Centocor*, No. 14405-NC, 14667-NC, 1997 WL 30216, at *4 (Del. Ch. Jan. 15, 1997). Here, there is no such evidence.

**(B)  Maryland Law Does Not Recognize Claims for Conspiracy to Breach A Fiduciary Duty Unless the Defendant Itself Owed the Underlying Duty.**

Under Maryland law, a defendant cannot be liable for conspiracy to breach a fiduciary duty if that defendant itself did not owe the duty. *Shenker v. Laureate Educ. Inc.*, 983 A.2d 408,

---

[2]  It is well settled that "[t]he corporate law of the state of incorporation is controlling with respect to the fiduciary duties of its directors as well as other internal corporate affairs." *Treco, Inc. v. Land of Lincoln Savings and Loan*, 749 F.2d 374, 377 (7th Cir. 1984). Claims for aiding and abetting and conspiring to breach fiduciary duty, like claims for the underlying breach, are also governed by the substantive law of the corporation's state of incorporation. *Nagy v. Riblet Prods. Corp.*, 79 F.3d 572, 576 (7th Cir. 1996). From its inception in 1998 until January 1, 2001, Cadant was a Maryland corporation. Effective January 1, 2001, Cadant reincorporated as a Delaware corporation. Accordingly, the Trustee's claims pertaining to alleged breaches occurring before January 1, 2001 are governed by Maryland law, and the Trustee's claims concerning alleged breaches occurring thereafter are governed by Delaware law.

428-29 (Md. 2009). While outside directors owe fiduciary duties to the companies on whose boards they serve, those directors' employers do not. *See id.* at 429. The Chase entity Defendants themselves were not fiduciaries of Cadant. Consequently, as a matter of law, these entity Defendants cannot be held liable for conspiracy to breach a fiduciary duty with respect to any Director Defendant's conduct taking place before January 1, 2001 (*i.e.*, while Cadant was a Maryland corporation).

**(C)** **There Can Be No Conspiracy Between Chase and Its Employees.**

A corporate entity cannot conspire with its own employees. *Marmott v. Md. Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986) ("The law is well-settled . . . that a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility"); *In re Transamerica Airlines, Inc.*, No Civ. A. 1039-N, 2006 WL 587846, *6 (Del.Ch. Feb. 28, 2006) ("[A] corporation generally cannot be deemed to have conspired with . . . its officers and agents"). Thus, as a matter of law, none of the Chase entity Defendants could have conspired with itself through Walker or Oppenheimer.

**(D)** **There is No Evidence of a Conspiratorial Agreement Involving Chase.**

More fundamentally, the Trustee's conspiracy claim fails because there is no evidence whatsoever that the Chase entity Defendants entered into any ***agreement*** with anyone to accomplish an unlawful act (*i.e.*, to breach a fiduciary duty). Such an agreement is the baseline requirement for all conspiracy claims. *See*, *e.g.*, *Elec. Store, Inc. v. Cellco P'ship*, 732 A.2d 980, 993 (Md. Ct. Spec. App. 1999) ("There can be no conspiracy where there is no agreement"); *Lipson v. Anesthesia Services, P.A.*, 790 A.2d 1261, 1289 (Del. Super. Ct. 2001). Yet, the Trustee has not put forth a shred of evidence – even circumstantial evidence – suggesting that any Chase entity Defendant is a party to any such agreement, with anyone. As this Court

observed recently, "[t]here is no evidence that I have heard so far that there are some kind of secret negotiations going on that the board is not aware of." (Transcript of Proceedings, Mar. 2, 2010, at 2976:23-25.) Indeed, the Seventh Circuit held seven years ago – as to these same defendants – that

> ***[T]here was no agreement*** between Venrock and J.P. Morgan (nor do they have overlapping ownership or management) to control Cadant . . . . The plaintiffs' concocted term 'Venrock Affiliates' and the expression 'in virtual tandem' are obfuscations intended to conceal the absence of an agreement or conspiracy, nowhere alleged in the complaint and expressly disclaimed in the plaintiffs' reply brief.

*Kennedy v. Venrock Assocs.*, 348 F.3d 584, 590-91 (7th Cir. 2003) (emphasis added); *see also Marks v. Wolfson*, 188 A.2d 680, 685 (Del. Ch. 1963) (granting judgment as a matter of law where the plaintiff failed "to present any credible evidence indicative of a conspiracy, a collusive agreement or an illegal scheme concocted between a buyer and a seller"); *Latesco, L.P. v. Wayport, Inc.*, C.A. No. 4167-VCL., 2009 WL 2246793, at *9 n.33 (Del. Ch. July 24, 2009) (no allegations of "an explicit agreement among any of the defendants to engage in tortious activity").

The Trustee suggests feebly and incorrectly that scattered communications that Walker or Oppenheimer had with other board members, or with Venrock employees, about proposed financings or strategic issues facing Cadant, give rise to a "conspiratorial agreement." Not true. Evidence of mere communications – which are unremarkable in these circumstances because the Chase entity Defendants were already investors and **had Board observer rights** – without more is not enough.

First, these communications were made with the full knowledge and consent of other Cadant board members, usually Chairman and CEO Venkata Majeti himself.[3] As has been repeated throughout this trial, director Mark Rochkind or Chairman/CEO Majeti explicitly *instructed* the Chase or Venrock board members to engage in these communications.[4] It simply is perverse to suggest, as the Trustee does, that Oppenheimer or Walker (or anyone else) committed a wrongful act in furtherance of a conspiracy simply by obeying instructions from Cadant's CEO and Chairman.

Second, there is no evidence whatsoever that the identities of Oppenheimer's, Walker's, or Copeland's employers were somehow "hidden" from Cadant's other board members (or from anyone else). This was public knowledge, and all of the witnesses have conceded that they were fully aware of theses director's affiliations. Finally, the Trustee's suggestion that "confidential" information was exchanged rings just as hollow. Putting aside that – as Board observers – the Chase entities were *entitled* to Board information and could attend Board meetings at will, the purportedly "confidential" Cadant information was disclosed not by Oppenheimer, Walker, or another Director Defendant, but by Cadant's own employees.[5] Furthermore, the evidence shows that most of the communications were made at the express instruction of Chairman/CEO Venkata Majeti.

---

[3] *See*, *e.g.*, JTX 238, 12/28/00 email from Copeland to the Board ("**With the board's permission**, I will speak to the other investors directly and drive the closing.").

[4] *See*, *e.g.*, DX 388, 10/26/2000 email from Majeti to Copeland ("Eric: . . . please talk to the following four groups re: lead/co-lead [for a Series B financing] and the time to get to a Term Sheet" (providing Charlie Walker, Chris Montano, and Stephan Oppenheimer's contact information at Chase); Transcript of Proceedings, Feb. 24, 2010, at 2355:19-2356:19; DX 436 at p. 2, 11/19/00 email from Copeland to the Board ("Subject to the OK of the rest of the board, which I haven't yet obtained, ***Venkata has delegated to me the task of calling CCP*** on Monday and informing them that we would like to work with them within the broad framework outlined in their term sheet.").

[5] *See*, *e.g.*, JTX 186, 10/25/2000 email from Kevin Johnson (Cadant's acting CFO) to Walker enclosing detailed internal financial reports; Transcript of Proceedings, Feb. 24, 2010, at 2356:20-2358:1.

The contemporaneous documents involving the Chase entity Defendants that are in evidence "do not amount to a smoking gun that exposes some nefarious conspiracy" to harm Cadant. *Robyns v. Reliance Std. Life Ins. Co.*, 130 F.3d 1231, 1237 (7th Cir. 1997); *see also Borsellino v. Goldman Sachs Grp. Inc.*, 477 F.3d 502, 510 (7th Cir. 2007) (affirming dismissal of conspiracy and spoliation claims, refusing to "stack inference upon inference" that unknown documents show the existence of a conspiracy). Nor do they demonstrate the existence of any meeting of the minds to do so. *See Harrison v. Henry*, C.A. No. 08-352-SLR/MPT, 2009 WL 464260, at *8 (D. Del. Feb. 24, 2009). Simply suggesting directors acted in concert does not permit an inference of a conspiracy to breach fiduciary duties; there must be evidence supporting the existence of an actual ***agreement*** to accomplish a breach.

Far from an "agreement" to harm Cadant, the evidence here demonstrates that Chase, like Venrock, proceeded according to its interest in seeing Cadant succeed. If anything, the evidence shows that Chase sometimes negotiated ***adversely*** to Venrock.[6] Adversarial negotiation between competing investors is hardly a badge of collusion. *See Air Wis. Pilots Protection Comm. v. Sanderson*, 124 F.R.D. 615, 617 n.1 (N.D. Ill. 1988) (defendant's letter expressing displeasure with actions taken by other defendant demonstrated "true bargaining relationship, not collusion"). As a matter of law, no reasonable jury could find the necessary scienter to support a finding that Chase conspired to breach a fiduciary duty.

### (E) There Was No Underlying Breach of Fiduciary Duty by a Director Defendant, so Chase Could Not have Conspired to Commit One.

---

[6] *See, e.g.*, PX 131, 1/1/01 email from C. Walker to S. Oppenheimer ("venrock has dropped the ball on this deal in a bad way...we should not now be saving their chestnuts. eric/venrock need to endure the consequences by both giving up their previous warrants (pro rata) and carrying their fair share in this bridge.").

The conspiracy count against Chase is derivative and depends, first and foremost, on the Trustee's ability to prove an underlying breach of fiduciary by one or more of the Director Defendants. Without an underlying breach, Chase absolutely cannot be held liable for conspiring to commit one. *See Interim Health Care v. Fournier*, Civ. A. No. 13003, 1994 WL 89007, at *8, n.18 (Del. Ch. Feb. 28, 1994 (civil conspiracy claims must be predicated on an underlying unlawful act); *Brass Metal Prod., Inc. v. E-J Enter., Inc*., 984 A.2d 361, 386 (Md. Ct. Spec. App. 2009) ("Because we have concluded that there was no unlawful conversion, there was no basis for the jury to find a civil conspiracy"). In accordance with the business judgment rule, as more fully developed in Eric Copeland's Motion for Judgment as a Matter of Law, no reasonable jury could conclude that any Director Defendant breached his fiduciary duties with respect to any of the decisions challenged by the Trustee in this case.

### III. NO REASONABLE JURY COULD FIND THAT CHASE AIDED & ABETTED A BREACH OF FIDUCIARY DUTY.

For largely the same reasons the Trustee's conspiracy claim fails, so does his aiding and abetting claim.[7] To prove aiding and abetting a breach of fiduciary duty under Maryland law, a plaintiff must show (beyond the underlying breach) (1) contemporaneous knowledge of the breach by the alleged aiding/abetting non-fiduciary; and (2) the non-fiduciary's substantial assistance or encouragement of the fiduciary's commission of the breach. *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1043 (Md. 1995). Similarly, under Delaware

---

[7] Claims for aiding and abetting and conspiracy are often analyzed under the same standard and are generally considered interchangeable under governing law. *See*, *e.g.*, *Malpiede v. Townson*, 780 A.2d 1075, 1098 n.82 (Del. 2001); *Paine Webber v. Centocor*, No. 14405-NC, 1997 WL 30216, at *4 (Del. Ch. Jan. 15, 1997).

law, the Trustee must show "knowing participation" by the non-fiduciary in an underlying breach. *McGowan v. Ferro*, 859 A.2d 1012, 1041 (Del. Ch. 2004).[8]

### (A) There is No Evidence that Any Chase Entity Was Aware of Any "Inherently Wrongful" Breaches of Fiduciary Duty by the Director Defendants.

Under both Maryland and Delaware law, the successful aiding and abetting plaintiff must prove scienter. *See e.g., Schatz v. Rosenberg*, 943 F.2d 485, 495-496 (4th Cir. 1991) (Maryland law) (aiding and abetting claim failed where plaintiff did not plead requisite knowledge); *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) ("A third party may be liable for aiding and abetting a breach of a corporate fiduciary's duty to the stockholders if the third party 'knowingly participates' in the breach"). Even actual assistance in an act later deemed to be a fiduciary breach cannot suffice, unless there is evidence that the alleged aider/abettor knew, ***at the time it rendered that assistance***, that the fiduciary's actions constituted a breach. *State Bd. of Architects v. Clark*, 689 A.2d 1247, 1252 (Md. Ct. Spec. App. 1997); *Malpiede*, 780 A.2d at 1097; *see also Nebenzahl v. Miller*, Civ. No. 13206, 1996 WL 494913, at *7 (Del. Ch. Aug. 29, 1996) (alleged aidor/abettor must have contemporaneous knowledge of an "inherently wrongful" breach by the fiduciary).

No reasonable jury could find that the Chase entities were aware of any fiduciary duty breach by a Director Defendant (to the extent one even existed, which is vigorously denied). While Chase was aware, in a general sense, of the high-level issues facing Cadant as a consequence of being kept informed in the ordinary course of one of its portfolio investment, this

---

[8] The Trustee's burden is higher as to pre-2001 alleged breaches because under Maryland law, if the alleged aidor/abettor does not itself owe fiduciary duties (as Chase did not), then the plaintiff must show that the aidor/abettor possessed "a 'high conscious intent' and a 'conscious and specific motivation' to aid" in the underlying breach of fiduciary duty. *Schatz v. Rosenberg*, 943 F.2d 485, 496 (4th Cir. 1991) (Maryland law).

is not probative.  As a matter of law, this evidence is insufficient to permit an inference that the Chase entities knew that a decision made by the Director Defendants (or any director) on the board was "inherently wrongful".  *See L.A. Partners, L.P. v. Allegis Corp.*, Civ. No. 9033, 1987 WL 14531, *8 (Del. Ch. Oct. 22, 1987).  Nor does the evidence permit a finding that any of the Chase entities could have believed any Director Defendant was otherwise "endeavoring to breach" his fiduciary duties.  *See Greenfield v. Tele-Comm.*, Civ. A. No. 9814, 1989 WL 48738, at *3 (Del. Ch. May 10, 1989).

Again, it would be perverse to punish Venrock and Chase merely because they were among the only willing lenders in Cadant's darkest hours.  As the Delaware Chancery Court observed after dismissing aiding and abetting claims in *Trenwick Amer. Litig. Trust*,

> It is no doubt regrettable that Trenwick and Trenwick America became insolvent.  That insolvency no doubt injured their stockholders, creditors, customers, and employees.  But the mere fact of a business failure does not mean that a plaintiff can state claims against the directors, officers, and advisors on the scene just by pointing out that their business strategy did not pan out.  If simple failure gave rise to claims, the deterrent to healthy risk taking by businesses would undermine the wealth-creating potential of capitalist endeavors.

*Trenwick Amer. Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 218 (Del. Ch. 2006).  Mere contemporaneous knowledge of an action that a plaintiff later chooses to label "breach of fiduciary duty" cannot give rise to liability for aiding and abetting.  *See Panter v. Marshall Field, Co.*, 646 F.2d 271, 281 (7th Cir. 1981); *see also Katell v. Morgan Stanley Group, Inc.*, Civ. A. No. 12343, 1993 WL 10871, *8 (Del. Ch. Jan. 14, 1993) (rejecting aiding & abetting claim against non-fiduciaries where non-fiduciaries knew about fiduciaries' reliance on "blatantly deficient fairness opinions" rendered in connection with sale of assets at allegedly unfairly low prices; observing that "Defendants were not even required to obtain fairness opinions in the transactions, deficient or otherwise.")

### (B) Chase Did Not "Substantially Assist" or "Knowingly Participate" In Any Underlying Breaches of Fiduciary Duty.

Mere knowledge of a fiduciary's breach is not enough. Beyond scienter, the Trustee must prove that Chase itself "engaged in assistive conduct that [it] would know would contribute to the happening of that [breach]." *Saadeh v. Saadeh, Inc.*, 819 A.2d 1158, 1171 (Md. Ct. Spec. App. 2003); *see also Assoc. Imports, Inc. v. ASG Industries, Inc.*, No. 5953, 1984 WL 19833, *12 (Del. Ch. June 20, 1984) ("knowledge ***and intentional complicity*** . . . are essential"); *Malpeide*, 780 A.2d at 1097 ("Knowing participation in a board's fiduciary breach requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach."). For all his efforts to impugn the conduct of the Director Defendants, the Trustee has utterly failed to introduce evidence showing, or even tending to show, that any of the Chase entity defendants were ***knowing participants*** in any allegedly improper behavior by a Director Defendant designed to harm Cadant.

In short, there is no "credible evidence indicative of a conspiracy, a collusive agreement or an illegal scheme". *Marks*, 188 A.2d at 685. At very most, the Trustee has proven that Chase (like Venrock) was interested in seeing its portfolio company realize its full potential and full value. Knowing participation "requires more" than "conclusory charges that [Chase] dictated terms to a self-dealing [Cadant] board", which, "if true, lead to an inference of hard bargaining", not aiding and abetting a fiduciary breach at Cadant's shareholders' expense. *In re Wheelabrator Techs. Inc. S'holders Lit.*, C.A. No. 11495, 1992 WL 212595, at *10 (Del. Ch. Sept. 1, 1992). As discussed above, the Director Defendants' negotiations occurred with the full knowledge and blessing of the rest of Cadant's board. The "only reasonable inference" from such arm's length negotiations is that the Director Defendants were "deft negotiators", seeking a

transaction that "they viewed as favorable to [the company]". *In re NYMEX S'holder Lit.*, C.A. Nos. 3621-VCN, 3835-VCN, 2009 WL 3206051, *13 (Del. Ch. Sept. 30, 2009).

### (C) There Was No Underlying Breach of Fiduciary Duty.

Of course, the Chase entities cannot be found to have aided and abetted a breach of fiduciary duty because there is no evidence of an underlying breach. *See* § II(E) above; *see also Latesco,* 2009 WL 2246793, at *9 ("Because the court has already determined that the plaintiffs have failed to state a claim for breach of fiduciary duty by the director defendants, it is impossible to state a claim for aiding and abetting a breach of fiduciary duty predicated on any such breach"); *Weil v. Morgan Stanley DW Inc*., 877 A.2d 1024, 1039 (Del. Ch. 2005) (claim for aiding and abetting "necessarily fails" where plaintiff fails to state claim for underlying breach of fiduciary duty).

### IV. PURSUANT TO THE TERMS OF THE SECOND BRIDGE LOAN, ALL CLAIMS AGAINST CHASE HAVE BEEN RELEASED AS TO PRE-MAY 22, 2001 CONDUCT.

The Second Bridge Loan (JTX 299) includes a broad release provision:

> [Cadant] ... hereby forever releases Agent and each Lender and their respective ... officers ... (collectively, the "Releasees") from any and all ... causes of action (whether at law or in equity) ... that [Cadant] may have against the Releasees which arise from or relate to any actions which the Releasees may have taken or omitted to take prior to the date this Agreement was executed, including without limitation with respect to ... this Agreement, [and] other Financing Agreements....

(JTX 299, at p. 22.) The term "Financing Agreements", as defined in the release, includes among other things the First and Second Bridge Loans (*Id.* at p. 2); and the terms "Agent" and "Lender" both include, among others, the Chase entities. (*Id.* at Schedule 1 at LT017819-21.) Accordingly, any and all claims against Chase pertaining to events occurring before or in connection with the Second Bridge Loan are expressly barred.

## V. THE "FUND" DEFENDANTS ASSOCIATED WITH CHASE MUST BE DISMISSED BECAUSE THE TRUSTEE INTRODUCED NO EVIDENCE CONCERNING THEM.

Hambrecht & Quist California, H&Q Employee Venture Fund 2000, L.P., Access Technology Partners, L.P., Access Technology Partners Brokers Fund, L.P., H&Q Cadant Investors, L.P., and Chase Equity Associates, L.L.C. (the "Chase Fund Defendants") are named as defendants, but it is clear that they have no involvement with the underlying facts of this case. Indeed, during trial the Trustee has made virtually no reference to them at all. At a minimum, as a matter of law no reasonable jury could conclude that any of the Chase Fund Defendants conspired or aided and abetted in the breach of a fiduciary duty.

## *CONCLUSION*

As the Delaware Chancery Court has observed,

> ***All*** corporate combinations leave in their wake certain artifacts – documents, emails, conversations, and notes. If one digs through enough of the rubble. . ., one will almost invariably find something questionable. A clever corporate archeologist can extrapolate from these suspicious artifacts and concoct a theory of malfeasance, disloyalty, and bad faith. Yet, theories alone cannot lead to liability. To survive a [motion for judgment as a matter of law], such excavating plaintiffs must provide the Court with ***solid evidence*** of a genuine issue of material fact; they cannot rely on their [own] allegations.

*In re Transkaryotic Therapies*, 954 A.2d 346, 349 (Del. Ch. 2008) (emphases added). For all of the reasons set forth above, the Trustee has failed to present evidence that the Chase entity defendants knowingly and affirmatively conspired or aided in the commission of a breach of fiduciary duty. Accordingly, it is appropriate to enter judgment in favor of the Chase entity Defendants as a matter of law, and against the Trustee, on Counts Six and Sixteen of the Trustee's Complaint, pursuant to Fed. R. Civ. P. 50(a).

Dated: March 11, 2010                Respectfully submitted,

/s/ David A. Rammelt
David A. Rammelt
Dawn M. Beery
James M. Reiland
**K&L GATES LLP**
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Tele: (312) 372-1121
Facsimile: (312) 827-8000

*Counsel for Venrock Associates,*
*Venrock Associates II, L.P.,*
*Venrock Entrepreneurs Fund, L.P.,*
*Hambrecht & Quist California,*
*H&Q Employee Venture Fund 2000, L.P.,*
*Access Technology Partners, L.P.,*
*Access Technology Partners Brokers Fund, L.P.,*
*H&Q Cadant Investors, L.P.,*
*Chase Equity Associates, L.L.C., and*
*J.P. Morgan Partners (BHCA), L.P.*

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on March 15, 2010, a copy of the foregoing **Motion** was filed electronically and served on the below-listed counsel of record via the Court's electronic filing system:

| | |
|---|---|
| James A. McGurk<br>Law Offices of James A. McGurk, P.C.<br>10 South LaSalle Street, Suite 3300<br>Chicago, IL  60603<br><br>*Counsel for the Plaintiff* | Richard C. Leng<br>Law Offices of Richard C. Leng<br>330 West Main Street<br>Barrington, IL  60010<br><br>*Counsel for the Plaintiff* |
| Hugh G. McBreen<br>Brian Hogan<br>Thomas Bradley<br>McBreen & Kopko<br>20 North Wacker Drive, Suite 2520<br>Chicago, IL  60606<br><br>*Counsel for the Plaintiff* | Thomas O. Kuhns<br>Matthew T. Regan<br>Gabor Balassa<br>Melissa Grouzard<br>Kirkland & Ellis LLP<br>300 North LaSalle Street<br>Chicago, IL  60654<br><br>*Counsel for the Individual Defendants* |

　　　　　　　　　　　　　　　　　　　　　　　　____/s/ James M. Reiland_____  _____